EXHIBIT A

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Nicholas Stephens<br>19033 Forest ave apt 4 Castro Valley CA 94546<br><br>TELEPHONE NO: 510-586-4420    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* nickstephens120@yahoo.com<br>ATTORNEY FOR *(Name):* | **ENDORSED**<br>**FILED**<br>**ALAMEDA COUNTY**<br><br>**OCT 16 2023**<br><br>CLERK OF CHA ALAMEDA CORES<br>By _____<br>                                    Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon St Oakland ca 94612
MAILING ADDRESS: 1225 Fallon St Oakland Ca 94612
CITY AND ZIP CODE: oakland 94612
BRANCH NAME: superior court of califronia

PLAINTIFF: Nicholas Stephen

DEFENDANT: United Parcel Service Inc, Liberty mutual insurance company inc.

| x | DOES 1 TO 1 _____ ion doe |
|---|---|

| COMPLAINT—Personal Injury, Property Damage, Wrongful Death | CASE NUMBER: |
|---|---|

☐ **AMENDED *(Number):***

Type *(check all that apply):*

☐ **MOTOR VEHICLE**    ☒ **OTHER** *(specify):* assault,W/GBI/Hate crime
☐ **Property Damage**    ☐ **Wrongful Death**
☒ **Personal Injury**    ☒ **Other Damages** *(specify):* person&property

Jurisdiction *(check all that apply):*
☐ **ACTION IS A LIMITED CIVIL CASE**
    Amount demanded ☐ does not exceed $10,000
                                  ☐ exceeds $10,000, but does not exceed $25,000
☒ **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)**
☐ **ACTION IS RECLASSIFIED** by this amended complaint
        ☐ **from limited to unlimited**
        ☐ **from unlimited to limited**

**23CV0 47357**

1. **Plaintiff** *(name or names):* Nicholas Stephens
   alleges causes of action against **defendant** *(name or names):*
   United Parcel Services Inc. & jon doe 1

2. This pleading, including attachments and exhibits, consists of the following number of pages: unlimited

3. Each plaintiff named above is a competent adult
   a. ☐ **except** plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor   ☒ an adult
          (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
          (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*
   b. ☐ **except** plaintiff *(name):*
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe):*
      (3) ☐ a public entity *(describe):*
      (4) ☐ a minor   ☐ an adult
          (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
          (b) ☐ other *(specify):*
      (5) ☐ other *(specify):*

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
www.courts.ca.gov

1

PLD-PI-001

| SHORT TITLE:<br>Stephens VS United Parcel Services Inc. | CASE NUMBER: |
|---|---|

4. [x] Plaintiff *(name):* Nicholas Stephens
    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

a. [x] **except** defendant *(name):* United Parcel Services Inc
   - (1) [ ] a business organization, form unknown
   - (2) [x] a corporation
   - (3) [ ] an unincorporated entity *(describe):*
   - (4) [ ] a public entity *(describe):*
   - (5) [ ] other *(specify):*

c. [x] **except** defendant *(name):* Jon doe 1
   - (1) [ ] a business organization, form unknown
   - (2) [ ] a corporation
   - (3) [ ] an unincorporated entity *(describe):*
   - (4) [ ] a public entity *(describe):*
   - (5) [x] other *(specify):*
     person

b. [ ] **except** defendant *(name):* Liberty Mutual Insurance Co.
   - (1) [ ] a business organization, form unknown
   - (2) [x] a corporation
   - (3) [ ] an unincorporated entity *(describe):*
   - (4) [ ] a public entity *(describe):*
   - (5) [ ] other *(specify):*

d. [ ] **except** defendant *(name):*
   - (1) [ ] a business organization, form unknown
   - (2) [ ] a corporation
   - (3) [ ] an unincorporated entity *(describe):*
   - (4) [ ] a public entity *(describe):*
   - (5) [ ] other *(specify):*

[ ] Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

a. [x] Doe defendants *(specify Doe numbers):* 1 _____ were the agents or employees of other
   named defendants and acted within the scope of that agency or employment.

b. [x] Doe defendants *(specify Doe numbers):* 1 _____ are persons whose capacities are unknown to
   plaintiff.

7. [x] Defendants who are joined under Code of Civil Procedure section 382 are *(names):*
   United Parcel service Inc., Liberty Mutual Insurance Co., Jon doe 1

8. This court is the proper court because

a. [x] at least one defendant now resides in its jurisdictional area.
b. [x] the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
c. [x] injury to person or damage to personal property occurred in its jurisdictional area.
d. [x] other *(specify):*
   LABOR CODE- DIVISION 4. WORKERS' COMPENSATION AND INSURANCE [3200 - 6002] ( Heading of Division 4
   amended by Stats. 1979, Ch. 373. ) 3203. This division and Division 5 (commencing with Section 6300) do not apply to
   employers or employments which, according to law, are so engaged in interstate commerce as not to be subject to the

9. [ ] Plaintiff is required to comply with a claims statute, **and**

a. [x] has complied with applicable claims statutes, **or**
b. [x] is excused from complying because *(specify):*
   i plaintiff has given endless oppurtunity at settlement with refusal from defendant(s). in addition defendant has used
   administration jurisdiction and proceedings to contiually violate civil rights, due process and marsys law.

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

**PLD-PI-001**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

a. ☐ Motor Vehicle
b. ☒ General Negligence
c. ☒ Intentional Tort
d. ☐ Products Liability
e. ☒ Premises Liability
f. ☒ Other *(specify):*
    professional misconduct

11. Plaintiff has suffered
a. ☒ wage loss
b. ☒ loss of use of property
c. ☒ hospital and medical expenses
d. ☒ general damage
e. ☒ property damage
f. ☒ loss of earning capacity
g. ☒ other damage *(specify):*
    future earning potential

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
a. ☐ listed in Attachment 12.
b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.
    correct either superior or court of appeals

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
a. (1) ☒ compensatory damages
   (2) ☒ punitive damages
   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
   (1) ☒ according to proof
   (2) ☒ in the amount of: $ 10,000,000.00

15. ☒ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*
   unlimited

Date: 10-16-2023

Nicholas Stephens
_____
      (TYPE OR PRINT NAME)

*Nicholas Stephens* (signature)
_____
      (SIGNATURE OF PLAINTIFF OR ATTORNEY)

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

For your protection and privacy, please press the Clear

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Nicholas Stephens<br>19983 Forest Ave apt 1 Castro Valley CA 94546<br>TELEPHONE NO.: 510) 586-4420   FAX NO. *(Optional):*<br>E-MAIL ADDRESS: *(Name):* nickstephens12@yahoo.com<br>ATTORNEY FOR *(Name):* | **FILED**<br>**ALAMEDA COUNTY**<br>OCT 16 2023<br>CLERK OF THE SUPERIOR COURT<br>By _____ Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS: RENE C. DAVIDSON COURTHOUSE
CITY AND ZIP CODE: 1225 FALLON STREET, ROOM 109
BRANCH NAME: OAKLAND, CA 94612

CASE NAME:

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>23CV047357 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☑ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties     d. ☑ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve     e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 10-16-2023    Nicholas Stephens

Nicholas Stephens                                        ► Nicholas Stephens
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California         **CIVIL CASE COVER SHEET**         Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
                                                                          Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear**

5

PLD-PI-001(4)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Stephens VS United Parcel Service Inc., Liberty Mutual Insurance Co. | |

_____ **CAUSE OF ACTION—Premises Liability**     Page _____
    (number)

ATTACHMENT TO [ X ] Complaint     [ ] Cross - Complaint
*(Use a separate cause of action form for each cause of action.)*

Prem.L-1. Plaintiff *(name):* Nicholas Stephens

alleges the acts of defendants were the legal (proximate) cause of damages to plaintiff.

On *(date):* 03-22-2023        plaintiff was injured on the following premises . . the following

fashion *(description of premises and circumstances of injury):*

mail sorting facility, premeditated hate crime physical assault W/GBI (jon doe (1)layed and waited) witnessed by facility surveillance system. see attached NLRB charge and Affidavit, Awaiting Oakland police report.

Prem.L-2.   [ X ]   **Count One—Negligence** The defendants who negligently owned, maintained, managed and operated the described premises were *(names):*

United Parcel Services Inc. and jon does 1

     [ X ] Does 1 _____ to _____

Prem.L-3.   [ ]   **Count Two—Willful Failure to Warn** [Civil Code section 846] The defendant owners who willfully or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity were *(names):*

United Parcel Services Inc.

     [ ] Does _____ to _____

Plaintiff, a recreational user, was   [ ] an invited guest   [ ] a paying guest.

Prem.L-4.   [ ]   *Count Three—Dangerous Condition of Public Property* The defendants who owned public property on which a dangerous condition existed were *(names):*

     [ ] Does _____ to _____

     a.   [ ] The defendant public entity had   [ ] actual   [ ] constructive notice of the existence of the dangerous condition in sufficient time prior to the injury to have corrected it.

     b.   [ ] The condition was created by employees of the defendant public entity.

Prem.L-5.a.   [ X ]   **Allegations about Other Defendants** The defendants who were the agents and employees of the other defendants and acted within the scope of the agency were *(names):*

Liberty Mutual Insurance Co.,Monika Haight law &ups acted with professional misconduct, negligence and malice including acts of intimidation and harrasment with assumed not proven authority of ALJ @DIR DIV 4

     [ ] Does _____ to _____

b.   [ X ] The defendants who are liable to plaintiffs for other reasons and the reasons for their liability are

     [ X ] described in attachment Prem.L-5.b   [ ] as follows *(names):*

see attachment plea paper, NLRB charge and Affidavit, QME/AME report to cause of injury. awaiting Oakland police report, denials by defendant to informal intergorities and production of ESI (video of assault).

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California PLD-
PI-001(4) [Rev. January 1, 2007]
**CAUSE OF ACTION—Premises Liability**
Code of Civil Procedure, § 425.12
*www.courts.ca.gov*

6

Case Name: Stephens. V. United Parcel Service Inc   Case #: _____
Liberty Mutual Insurance Co.

1   Your Name: Nicholas Stephens _____

2   Your Address: 19983 Forest Ave Apt J _____

3   Castro Valley CA 94546 _____

4   Your Phone Number: 510-586-4420 _____

5   Self-Represented

6

7                    SUPERIOR COURT OF CALIFORNIA

8                    COUNTY OF SANTA CLARA

                     CIVIL DIVISION

9

10  Stephens, Nicholas _____   Case No.: _____

11                                       PLEADING TITLE:

12       **Plaintiff,**                  Case Law Citations

13       **And**                         to Premises Liability/

14  United Parcel Service Inc., Liberty Mutual Insurance Co.,   Personal injury.

15       **Defendant**                   Judge: _____

16

17

18  Reference and Citations Provided by Google.com in association with

19  the Law offices of Stimmel, Stimmel & Roeser.

20  In California an Employer is Vicariously liable for the negligent

21  and wrongful acts of his employees that are Committed

22  Within the Scope of employment, thus, Even if the employer did

23  Nothing wrong his self, if the employee was negligent of

24  Acting Wrongful and party was injured, the Employer is Liable.

25  See CA Civil Code Section 2338.

Pleading Title: _____          Page _____ of _____

7

Case Name: _____   Case #: _____

1  "Unless Required by Law to employ that particular agent,
2  a Principal is responsible to the third person for the negligence
3  of his agent in the transaction(s) of the business
4  of the agency, including wrongful acts committed by such
5  agent in as a Part of the transaction or such business and
6  for his willfull Omission to fulfill the obligation as principal
7  See Carr V. Wm. C. Crowell Co. (1946) 28 Cal. 2d 652, 654
8  It is settled that an employer is liable for willfull and malicious torts
9  of his employee committed in the scope of the employment)
10  Whether an employee is acting within the scope of his employment is
11  Broadly. John R V Oakland Unified School Dist. (1989) 48 Cal. 3d 438, 447. "the fact
12  that an employee is not engaged in the ultimate object of his employment
13  at the time of his wrongful act does not preclude attribution of
14  liability to an employer (citation). Personal Business test
15  "Where the employee is combining with that of his employer,
16  or attending to both at substantially the same time, no nice inquiry
17  will be made as to which business he was actually engaged-
18  in at time of injury, unless it clearly appers that neither direct-
19  or indirectly could he have been serving his Employer." See -
20  Car at 654. Farmers Ins. Grp. V. City of Santa Clara (1995) 11 Cal. 4th 992, 1004.
21  "an employer May be liable for an employees acts where the employer either  -
22  authorized the tortious act or subsequently ratified an originally -
23  unauthorized tort (citation). the failure to discharge who has committed
24  misconduct may be evidence of ratification." Baptis V. Robinson (2006) 143 Cal. 4pr 4. 151. 169
25  Ca Civil Code Section 2339. )

Pleading Title: _____          Page _____ of _____

8

Case Name: _____     Case #: _____

1   the theory of ratification is generally applied where an employer

2   fails to Investigate or respond to charges that an employee

3   Committed an Intentional tort, such as assault or battery, A principal may be

4   liable when it ratifies an originally unauthorized tort.

5   C. R. v. tenet Healthcare Corp (2009) 169 Cal. App. 4th 1094, 1110-11.

6   _____

7   _____

8   _____

9   _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  I declare under penalty of perjury under the laws of the State of California that the

18  foregoing is true and correct.

19  Today's Date: 11-16-2023

20

21  Nicholas Stephens                      Nicholas Stephens

22  PRINT YOUR NAME                        SIGN YOUR NAME

23

24

25

Pleading Title: _____     Page _____ of _____

9

1  BRYAN SADIUA (SB NUMBER: 311544)
2  BOXER & GERSON, LLP
   Rotunda Building
3  300 Frank H. Ogawa Plaza, Suite 500
   Oakland, CA 94612
4  (510) 835-8870

5  Attorneys for Applicant

6

7               WORKERS' COMPENSATION APPEALS BOARD

8                        STATE OF CALIFORNIA

9

10  Nicholas Stephens,                      Case No. ADJ16006194

11                  *Applicant,*

12          *vs.*                           **PETITION FOR**
13                                          **PENALTY PURSUANT TO LABOR**
14                                          **CODE §5814**
    United Parcel Service; ,
15
                *Defendants.*
16

17          COMES NOW, applicant Nicholas Stephens, by and through his attorney, Bryan

18  Sadiua, Law Offices of Boxer & Gerson, and petitions the Board for attorney's fees and sanctions

19  under §5813 as well as an increase in benefits pursuant to §5814 for defendant's unreasonable

20  delays in providing benefits as set forth below:

21          1.      Based upon information and belief, applicant asserts that defendants have

22  unreasonably delayed payment of temporary total disability benefits;

23          2.      Applicant hereby formally demands a full chronological check-by-check

24  accounting of all benefits paid through date.  If a previous printout has been provided, then this

25  demand may be satisfied by providing all subsequent payment history;

26

27

28                                       - 1 -

BOXER
&
GERSON

3.      The AME for the orthopedic component of this case is Dr. Stark. Dr. Stark has recently issued an evaluation report dated October 27, 2022 and supplemental report dated January 12, 2023 that do not find the Applicant P&S or MMI. Moreover, on February 16, 2023 the Applicant's primary treating physician provided the injured worker with work restrictions that cannot be accommodated by the employer. Applicant attorney demanded that temporary total disability benefits be picked up. On March 8, 2023 Defendant issued a temporary total disability delay letter asserting TD benefits are being withheld because "per agreement, TD is deferred pending AME's comments (sic)." However, no such agreement that TD benefits may be withheld despite medical evidence supporting TD was made.

4.      Applicant expressly reserves the right to amend this Petition as discovery of additional facts warrants.

WHEREFORE, comes now Applicant by and through his attorney and petitions the Board for sanctions and attorney's fees in relation to the violations of Labor Code §5813 for failing to provide temporary disability benefits owed to the injured worker or accurately responding to inquiries as shown forth above. Applicant additionally petitions the Board for an increase in benefits pursuant to Labor Code §5814 for defendant's unreasonable delays in providing temporary disability benefits as shown forth above.

Dated: March 9, 2023                           Respectfully submitted,

                                               BOXER & GERSON, LLP

                                        By     _____
                                               BRYAN SADIUA

- 2 -

BOXER
&
GERSON

1

2

**VERIFICATION**

3

4       Under penalty of perjury, I declare the truth of the following:  (a) That the contents

5  of the foregoing document are true and correct of my own knowledge, except as to matters

6  stated therein on information and believe: (b) that the matters so stated are believed by me to

7  be true and correct; and (c) that I make this Verification because the facts set forth in said

8  document are within my knowledge and because as attorney for petitioner herein, I am more

9  familiar with such facts than is said petitioner herein.

10       Executed on March 9, 2023 at Oakland, California.

11

12                                          BOXER & GERSON, LLP

13                              By _____

14                                          BRYAN SADIUA
                                           ATTORNEY FOR APPLICANT

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          - 3 -

**BOXER
&
GERSON**

1   BOXER GERSON OAKLAND
2   GARY J LEE
    (510) 835-8870, EXT 342
3   glee@boxerlaw.com

**PROOF OF SERVICE BY MAIL**

4

5        I am a citizen of the United States and I am employed in the County of Alameda.  I am
    over the age of eighteen years and not a party to the action in which these papers are served.
6   My business address is the Rotunda Building, 300 Frank H. Ogawa Plaza, Suite 500, Oakland,
    CA 94612.

7

8        On March 9, 2023, I served the following document(s):

9        **PETITION FOR PENALTY PURSUANT TO LABOR CODE §5814**

10       placing an accurate copy of the foregoing in a sealed envelope with postage fully
11  prepaid, in a United States Postal Service mail box in Oakland, California, addressed as
    follows:

12

13       BY EMAIL by transmitting a true copy by electronic transmission in accordance with
    standard procedures:

14
    Ms. Monika Hight
15  Law Offices of Monika Hight
    PO Box 2628
16  Petaluma, CA 94953

17

18       I, Danielle Wong, declare under penalty of perjury that the foregoing is true and
    correct.  Executed March 9, 2023, at Oakland, California.

19

20                                                _____
21                                                DANIELLE WONG

22  Nicholas Stephens v. United Parcel Service

23

24

25

26

27

28                                    - 4 -

BOXER
&
GERSON

13

# STATE OF CALIFORNIA
# DWC DISTRICT OFFICE
# E-COVER SHEET

REQUIRED FIELDS SHOWN BY "*"

Companion Cases Exist ☑                                    Location: CTL

More than 15 Companion Cases ☐

Date: ( MM/DD/YYYY)   03/09/2023

Case Number*:   ADJ16006194         SSN(Numbers Only)

◯ Specific Injury   (If Specific Injury, use the start date as the specific date of injury)

◯ Cumulative Injury

(START DATE: MM/DD/YYYY) *        (END DATE: MM/DD/YYYY)

Body Part 1        :                          Body Part 2 :

Body Part 3        :                          Body Part 4 :

Other Body Parts :

---

**Please check unit to be filed on ( check only one box )***

● ADJ      ◯ DEU      ◯ SIF      ◯ UEF      ◯ SAU      ◯ INT      ◯ RSU

---

**Companion Cases**

**Case 1:**

◯ Specific Injury   (If Specific Injury, use the start date as the specific date of injury)

◯ Cumulative Injury

(START DATE: MM/DD/YYYY)        (END DATE: MM/DD/YYYY)

Body Part 1        :                          Body Part 2 :

Body Part 3        :                          Body Part 4 :

Other Body Parts :

---

**Case 2:**

◯ Specific Injury   (If Specific Injury, use the start date as the specific date of injury)

◯ Cumulative Injury

(START DATE: MM/DD/YYYY)        (END DATE: MM/DD/YYYY)

Body Part 1        :                          Body Part 2 :

Body Part 3        :                          Body Part 4 :

Other Body Parts :

14

# STATE OF CALIFORNIA
# DIVISION OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD
# DECLARATION OF READINESS
# TO PROCEED TO EXPEDITED HEARING (TRIAL)
## [Labor Code section 5502(b) ]

> NOTICE: Any objection to the proceedings requested by a Declaration of Readiness to proceed shall be filed and served within ten (10) days after service of the Declaration.

| Case No. | ADJ16006194 |
|---|---|

## Applicant

| First Name* | NICHOLAS |
|---|---|
| MI | |
| Last Name* | STEPHENS |

## VS

## Employer Information :

| Employer Name* | UNITED PARCEL SERVICE |
|---|---|
| Employer Street Address/PO Box | 8400 PARDEE AVE |
| City | OAKLAND |
| State | CA |
| Zip Code (Numbers Only) | 94621 |

The Declarant requests that this case be set for expedited hearing and decision on the following issues:

○ Entitlement to medical treatment per Labor Code § 4600, except issues determined pursuant to Labor Code §§ 4610 and 4610.5.

◉ Entitlement to temporary disability, or disagreement on amount of temporary disability.

○ Whether there is a properly established MPN in which the employee may obtain treatment. (If requested, this will be the only issue heard at the hearing.) See Labor Code §§ 4603.2(a)(3); 5502(b)(B).

○ Entitlement to compensation is in dispute because of disagreement between employers and/or carriers.

Declarant states under penalty of perjury that he or she has made the following specific, genuine, good faith efforts to resolve the dispute(s) listed above: (Field size limited to 455 characters)

APPLICANT DEMANDED TD BE REINSTATED FOLLOWING PTP REPORT 2/16/23 PROVIDING THE APPLICANT W/ WORK RESTRICTIONS THAT CANNOT BE ACCOMMODATED BY THE EMPLOYER. ON 3/8/23 DEFENDANT ISSUED A TEMPORARY DISABILITY LETTER ASSERTING TD IS BEING WITHHELD ¿PER AGREEMENT THAT TD IS DEFERRED PENDING AME¿S COMMENTS.¿ NO SUCH AGREEMENT THAT TD MAY BE WITHHELD UNDER THIS ACCEPTED CLAIM HAS BEEN MADE. WCAB INTERVENTION REQUESTED FOR TD TO BE REINSTATED W/SIP & ATTY FEES

Declarant states under penalty of perjury that there is a bona fide dispute; that he/she is presently ready to proceed to hearing; that his/her discovery is complete on said issues.

| Declarant's Signature | S/ BRYAN SADIUA |
|---|---|
| Name and Law Firm | BOXER GERSON OAKLAND |
| Address | 300 FRANK OGAWA PLAZA #500 OAKLAND 94612 |
| Phone Number (Numbers Only) | 5108358870 |
| Date (MM/DD/YYYY) | 03/09/2023 |

1   **Law Office of Monika Hight**
    Monika Hight
2   Attorney At Law
    PO Box 2628
3   Petaluma, CA  94953
    (415) 234-6237
4   State Bar # 221067

5                    WORKERS' COMPENSATION APPEALS BOARD

6                            STATE OF CALIFORNIA

7   Kurt Burk,

8              *Applicant,*                    WCAB No.:  ADJ16006194

9        vs.
                                               **OBJECTION TO DECLARATION OF**
10                                             **READINESS TO PROCEED**
    United Parcel Service, Inc. and Liberty Mutual
11
    Insurance Co.,
12
               *Defendant*
13

14
          Comes now, Defendants, who object to the declaration of readiness to proceed filed by
15
    Applicant on March 7, 2023 based on the following:
16
          1.  Defendant has requested a supplemental report from the AME commenting on
17
              causation for the left knee as they parties recently received subpoenaed records for
18
              this body part/date of injury.
19
          2.  The last of the subpoenaed records status was received on 2/8/23 and the
20
              supplemental report request was sent 2/15/23 after review of the records.
21
    Wherefore, Defendants object to the declaration of readiness to proceed for the reasons
22
    set above.
23
    I declare under penalty of perjury that the above information is true and accurate to the
24
    best of my knowledge.
25
                                               */s/ Monika Hight*
26
                                               Monika Hight, Attorney at Law
27
                                               Attorney for Defendants
28
    Dated:        3/7/23

                                      17

1   **KURT BURK v UNITED PARCEL SERVICE and LIBERTY MUTUAL INSURANCE**
2   **CO.**

3                              ADJ16006194

4   Workers' Compensation Appeals Board
    1515 Clay Street, 6th Floor
5   Oakland, CA 94612-1402
    Via efile
6

7   David Blanchard
    Liberty Mutual Insurance
8   PO Box 779008
    Rocklin, CA  95677
9   Via Email

10  Dennis Popalardo
    Boxer & Gerson
11  300 Frank Ogawa Plz., #500
    Oakland, CA  94612
12  Via email

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE OF CALIFORNIA
DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

|  |  |
|---|---|
| Nicholas Stephens | Case No(s).  ADJ16006194 |
| *Applicant,* | STIPULATION and AWARD |
| v. | and/or |
| United Parcel Service | ORDER |
| *Defendant(s).* |  |

Having waived the provisions of Labor Code §5313, the parties stipulate as follows:

Defendant will pay TD from 3/22/22 through 6/22/22, less 15% for attorneys fees payable to Boxer & Gerson. Interest is included and penalty is waived as long as payment is made within 30 days of defendant's receipt of the award. TD after 6/22/22 is reserved and deferred.

| *Applicant* 02/08/2023 | *Interpreter* Monika Hight 2/8/23 |
|---|---|
| *Attorney for Applicant* | *Attorney for Defendant* |

☒ **IT IS SO ORDERED/AWARDED**
☐ **IT IS ORDERED THAT:** _____
☐ If Expedited Hearing, enter as Final Findings & Award/Order.

Dated: _____

**Workers' Compensation Administrative Law Judge**

On _____, this document ☐was personally served on all persons appearing at the hearing on said date, as set forth in the minutes of that hearing ☐was personally served on

_____
_____

☐was served by mail on all persons listed on the Official Address Record ☐was served by mail on following party or parties:

_____
_____
_____
By _____

☒NOTICE TO: Monika Hight
Pursuant to Rule 10500, you are designated to serve this document on all parties shown on the Official Address Record, together with a proof of service. You shall maintain this proof of service, which shall not be filed with the WCAB unless a dispute arises regarding service. A copy of the current Official Address Record accompanies this notice.

Reset Form    Print Form

# DOCUMENT SEPARATOR SHEET



Product Delivery Unit        ADJ

Document Type        LEGAL

Document Title    Proof of Service

Document Date    10-16-2023
                                         MM/DD/YYYY

Author            Nicholas Stephens

**Office Use Only**

Received Date    _____
                                         MM/DD/YYYY

DWC-CA form 10232.2 Rev. 11/2017  Page 1

20

Proof of Service by Mail

I declare that:

I am (resident of / employed in) the county of _Alameda_____, California.

I am over the age of eighteen years, my (business / residence) address is:

19983 Forest Ave Apt 1
Castro Valley, A 94546

On _10-16-2023_____, I served the attached Civil cause of action and Complaint & Petition for penalty on the parties listed below in said case, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully paid, in the United State mail at _Castro Valley_____ addressed as follows:

Liberty Mutual Rocklin, Po Box 779088 Rocklin CA 95677
Monika Hignt Po Box 2628 Petaluma CA 94953
WCAB-Oak 1515 Clay St. 6th Fl. Oakland Ca 94612

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on

(date) _10-16-2023_____, at _Oakland WCAB_____, California.

Type or print name _Nicholas Stephens_____

Signature _Nicholas Stephens_____

21

Form NLRB - 501 (3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| | |

File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1.  EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| United Parcel Services, Inc. | | (800)220-4126 |
| | | c. Cell No. |
| d. Address (Street, city, state, and ZIP code) 8400 Pardee Drive, Oakland, CA 94621 | e. Employer Representative Wayne Coleman | f. Fax No. |
| | | g. e-mail |
| | | h. Number of Workers Employed |
| i. Type of Establishment (factory, mine, wholesaler, etc.) Shipping Company | j. Identify Principal Product or Service Shipping | |

I. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and 3 of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

On August 28, 2023, the Employer discriminated against employee Nicholas Stephens by failing to provide the employee with temporary disability after terminating the employee in retaliation for or in order to discourage protected concerted activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) Nicholas C Stephens | |
|---|---|
| 4a. Address (Street and number, city, state, and ZIP code) 19983 Forest Avenue, Apt. 1, Castro Valley, CA 94546 | 4b. Tel. No. (510)586-4420 |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-mail nickstephens120@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

**6.  DECLARATION**

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| *Nicholas Stephens* | Nicholas C Stephens | Tel. No. (510)586-4420 |
|---|---|---|
| (signature of representative or person making charge) | (Print/type name and title or office, if any) | Office, if any, Cell No. |
| Address:   19983 Forest Avenue, Apt. 1, Castro Valley, CA 94546 | Date:  9/27/23 | Fax No. |
| | | e-mail nickstephens120@yahoo.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.   I-3372277851

United Parcel Services, Inc.
Case 32-CA-327252
International Brotherhood of Teamsters,
Local 70
Case 32-CB-327259

## Confidential Witness Affidavit

**I, Nicholas Stephens, under the penalty of perjury, state as follows:**

**I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.**

I reside at 19983 Forest Avenue, Apt. 1, Castro Valley, CA 94546

My cell phone number (including area code) is 510-586-4420

My e-mail address is nickstephens120@yahoo.com

I was employed by United Parcel Services, Inc.

located at 8400 Pardee Drive, Oakland, CA 94621

1       I started working at UPS sometime early April 2018. I was hired as a Pre-Load Loader.

2    When I was terminated my position was Clerk and my rate of pay was $21 an hour. Under the

3    Union's new contract, there was also a raise so the pay would have been $26 an hour. I was

4    terminated by UPS in July 2022. During my shift on the day I was terminated, I was called into

5    the Hub's conference room. When I was called into the conference room, Roberto Cabrillo (Risk

6    Management), Thomas LNU (Internal Security Guard), Drake LNU (Operations Manager), were

7    in the room. I don't remember if the Union rep was in the conference room with me. They told

**Privacy Act Statement**
The NLRB is asking you for the information on this form on the authority of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq.
The principal use of the information is to assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings
or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). Additional
information about these uses is available at the NLRB website, www.nlrb.gov. Providing this information to the NLRB is voluntary. However, if
you do not provide the information, the NLRB may refuse to continue processing an unfair labor practice or representation case, or may issue you
a subpoena and seek enforcement of the subpoena in federal court.

- 1 -                                      Initials ___N S___

Case 32-CA-327252
Case 32-CB-327259

1    me to read a behavior policy form, that I had to sign. After I signed the form, Roberto told me to

2    hand him my badge and that I was fired. The meeting didn't last longer than five minutes.

3              I was re-hired in December 2022 as a loader again. I ended up on going on workers comp

4    leave in January 2023. I was injured at work in March 2022 by getting assaulted by a supervisor.

5    Me going on workers comp leave was related to the injury that I had in March 2022, I didn't get

6    diagnosed with an injury until October 2022. The doctor didn't tell me my diagnosed injury, but

7    they told my job and workers comp attorney first. When I went back to work, I realized I

8    couldn't work the loader position and asked to work as a clerk. It was when I started to ask about

9    going to a different position and they put me on workers compensation leave without pay. I am

10   still employed there but am on unpaid workers compensation leave. UPS is violating Article 26

11   of our contract because they are not resolving this issue with me promptly. I have not been

12   communicating with the Employer outside of the workers compensation hearings that have been

13   ongoing.

14             I think I was terminated back in July 2022 because I filed a grievance against my

15   supervisor, Antonio Morris, for harassing me for going to the bathroom in June 2022. The Union

16   master-filed the grievance for me on July 14, 2022 and I was fired on July 15, 2022. The August

17   2023 date on my charge is related to a workers compensation court date where the Employer

18   stated that they would not be paying my temporary disability. UPS and its attorneys are telling

19   me that I am not entitled to any compensation that I need to quit my job.

20             The Union is not processing my grievances. After I was assaulted last year in March

21   2022, the Union said that they would be assisting me with the assault and would file a grievance

22   for me. They never filed that grievance over the assault. The next grievance was the grievance

23   from June 2022 regarding my supervisor harassing me. The last communication with the union

Initials: _N S_____

Case 32-CA-327252
Case 32-CB-327259

1   that I have attempted with the Union was on September 5, 2023. I texted Marty Frates about my

2   workers compensation situation. One thing I want to note, was that I called Marty in April 2023

3   to ask him to file a grievance regarding the Employer violating the contract and he told me to go

4   to hell. I also followed up with him in June 2022 and he never replied to me. The last time I

5   talked to him was in April. Marty said that he wasn't going to help me because I was racist.

6   People at work and the Union believe that I am racist because of an email that was sent to

7   someone at UPS. The email stated that I was racist, the email was from a Twitch streamer who

8   was trying to extort me. The email was sent sometime in March 2022.

9        The remedy that I am seeking is backpay (plus penalties and interest), getting my

10  temporary disability granted (plus penalties and interest), counseling.


**I understand that this affidavit is a confidential law enforcement record and should not be shown to any person other than my attorney or other person representing me in this proceeding.**

**I have read this Confidential Witness Affidavit consisting of 3 pages, including this page. I fully understand the Affidavit and I state under penalty of perjury that it is true and correct.**

**Date:** 10/11/2023   **Signature:** _Nicholas Stephens_
                                        Nicholas Stephens

**This affidavit was taken by:**

_____
**LANDON MONTES**
**Board Agent**
**National Labor Relations Board**

Initials: N S



**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010
Tel: (213) 381-9988
Fax: (213) 381-9989
wilshirelawfirm.com

Bobby Saadian, Esq. JD/MBA

| | |
|---|---|
| Colin M. Jones, Esq. | Ariella Perry, Esq. |
| Justin F. Marquez, Esq. | Andrew Haling, Esq. |
| John Yslas, Esq. | Hazel Chang, Esq. |
| Jon Teller, Esq. | Sutton A. Shapiro, Esq. |
| Johnny Ogata, Esq. | Daniel DeSantis, Esq. |
| Gail Richardson, Esq. | Shervin Ghanoongooi, Esq. |
| Tae Kim, Esq. | Megan Koster, Esq. |
| | Joseph Hakopian, Esq. |

May 05, 2023

**SENT VIA U.S. CERTIFIED MAIL: 9489 0090 0027 6490 3788 16**

UPS Customer Center
8400 Pardee Dr
Oakland, CA 94621

| RE: | **PRESERVATION OF EVIDENCE** | | |
|---|---|---|---|
| | **Our Client** | : | Nicholas Stephens |
| | **Date of Loss** | : | March 22, 2022 |
| | **Location** | : | UPS Customer Center - 8400 Pardee Dr, Oakland, CA 94621 |

Dear UPS Customer Center:

Please be advised that we represent Nicholas Stephens, regarding injuries he sustained on March 22, 2022 which is the subject of this litigation. Please let this letter serve as a formal demand that you preserve and maintain physical custody of any and all evidence. Please do not discard, dispose of, or alter any of the evidence in this matter. Please take all necessary steps to immediately preserve all evidence in this matter. You should notify all employees and independent contractors of this letter so nobody discards, disposed of, or alters any evidence.

Do not modify, alter or destroy any documents, images, audio recordings, video recordings, physical items or data that relates in any way to this case. Data and documents include, but are not limited to, incident reports, letters, memorandum, e-mails, handbooks, policy and procedure manuals, training documents, employee files, vehicle data, and social media content. If this case involves a vehicle, do not destroy or sell any vehicle(s) before notifying us in order to give us an opportunity to inspect the vehicle(s). Do not permit anyone to modify, alter or destroy any such items. As the California Supreme Court has stated: "Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both." *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 8.

You are hereby given further notice to immediately take all steps necessary to prevent the destruction, loss, concealment, or alternation of any paper, document, or electronically stored information ("ESI") and other data or information generated by and/or stored on your computers and storage media (e.g. hard disks, floppy disks, backup tapes, etc.), and emails related to this incident.

26

ESI should be afforded the broadest possible definition and includes, but is not limited to, all digital communications (e.g., e-mail, voice mail, instant messaging), word processed documents (e.g. Word and WordPerfect documents and drafts), spreadsheets and tables (e.g. Excel and Lotus 123 worksheets), accounting application data (such as QuickBooks, Money, or Peachtree), image and facsimile files (including PDF, TIFF, JPG, and GIF images), sound recordings (including WAV and MP3 files), video recordings, all databases, all contact and relationship management data, calendar and diary application data, online access data (including temporary, internet files, History, and Cookies), all presentations (including PowerPoint and Corel), all network access and server activity logs, all data created with the use of any Personal Data Assistant (PDA) such as Palm Pilot, HP Jornada, Cassiopeia, or other Windows-based or Pocket PC devices, all CAD files, and all back-up and archival files.

Please be advised that your clients failure to preserve the items will result in extremely unfavorable consequences to you. We intend to seek remedies against you if evidence in this case is modified, altered or destroyed. California law provide a broad range of sanctions for conduct that amounts to a "[misuse] of the discovery process." *Code of Civil Procedure* § 2023. Destroying evidence in anticipation of litigation or in response to litigation. See The California Supreme Court decision in the case of *Cedars-Sinai Med. Ctr. v. Superior Court* (1998) 18 Cal.4th 1

The Court may issue terminating sanctions, include striking part or all of the pleadings, dismissing part or all of the action, or granting a default judgment against the offending party. The Court may also issue issue sanctions ordering that designated facts be taken as established or precluding the offending party from supporting or opposing designated claims or defenses, evidence sanctions prohibiting the offending party from introducing designated matters into evidence, or monetary sanctions. Further, *Evidence Code* § 413, states "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's ... willful suppression of evidence relating thereto...." The standard California jury instructions include an instruction on this inference as well: "If you find that a party willfully suppressed evidence in order to prevent its being presented in this trial, you may consider that fact in determining what inferences to draw from the evidence." (BAJI No. 2.03 (8th ed.1994). *Cedars-Sinai Medical Center, supra*, 18 Cal.4th at 12.

Additionally, lawyers are subject to discipline, including suspension and disbarment, for participating in the suppression or destruction of evidence. *Business & Professions Code* § 6106 ["The commission of any act involving moral turpitude, dishonesty or corruption ... constitutes a cause for disbarment or suspension."]; *Rules Professional Conduct*, Rule 5-220 ["A member shall not suppress any evidence that the member or the member's client has a legal obligation to reveal or to produce."].) The purposeful destruction of evidence by a client while represented by a lawyer may raise suspicions that the lawyer participated as well. Even if these suspicions are incorrect, a prudent lawyer will wish to avoid them and the burden of disciplinary proceedings to which they may give rise and will take affirmative steps to preserve and safeguard relevant evidence. *Cedars-Sinai Medical Center, supra*, 18 Cal.4th at 13.

Finally, *Penal Code* § 135 creates criminal penalties for spoliation. "Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor." *Cedars-Sinai Medical Center, supra*, 18 Cal.4th at 13.

You should anticipate that much of the information subject to disclosure and responsive to discovery in this action is stored on your current or former computer systems and other media and devices (including personal digital or data assistants, voice-messaging or voice-mail systems, online repositories, and cell phones).

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques to safeguard all such evidence. Because hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for ESI. If information exists in both electronic and paper form, you should preserve them both.

Accordingly, please advise us immediately of the status of any such evidence and your intentions with respect to its preservation.

You are requested to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold. This means notifying all your employees and independent contractors of this requirement of preserving evidence. You are also requested to preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view, and (if necessary) reconstruct any ESI. You should not pack, compress, purge, or dispose of any file or any part thereof.

You are further requested to immediately identify and modify or suspend features of your operations, information systems, and devices that, in routine operations, operate to cause the loss of documents, tangible items, or ESI. Examples of such features and operations include, but are not limited to, purging the contents of e-mail repositories by age, capacity, or other criteria; using data or media wiping, disposal, erasure, or encryption utilities or devices; overwriting, erasing, destroying, or discarding back-up media; re-assigning, re-imaging or disposing of systems, servers, devices, or media; running antivirus or other programs that alter metadata; using metadata stripper utilities; and destroying documents or any ESI by age or other criteria.

With respect to servers like those used to manage electronic mail and network storage, the entire contents of each user's network share and e-mail account should be preserved and not modified.

Please forward a copy of this letter to all persons and entities possessing or controlling potentially relevant evidence. Your obligation to preserve potentially relevant evidence is required by law.

Very truly yours,
**WILSHIRE LAW FIRM**

Alivia Abreu, Esq.

# JAMES B. STARK, M.D., F.A.C.P.M. & R.
## A Medical Corporation

101 South San Mateo Drive # 215
San Mateo, CA 94401
Telephone: (650) 393-5323

March 15, 2022

Dennis A. Popalardo, Esquire
Boxer & Gerson LLP
300 Frank H. Ogawa Plaza, Suite 500
Oakland, CA 94612

Monika Hight, Esquire
Law Office of Monika Hight
P.O. Box 2628
Petaluma, CA 94953

RE: Nicholas Stephens
DOB: 06/11/1990
EMP: United Parcel Service
WCAB#: ADJ15417105
CLAIM#: WC648-D16586; WC648-D18004
DOI: CT-10/07/2021
DATE OF EXAM: 03/15/2022

Dear Counselors:

Thank you for referring Nicolas Stephens, a pleasant, 31-year-old, right-handed, former truck loader for AGREED MEDICAL EXAMINATION. I personally obtained the history, did a physical examination, reviewed the submitted file and prepared this report.

Billing reflects a Comprehensive Medical-Legal Evaluation with the AME modifier, ML201-94.

Mr. Stephens initiated employment with UPS in April 2018. Initially, his job was loading trucks with oversized materials.

On October 7, 2021, he was experiencing lower back pain that he attributed to repetitive bending and lifting activities at work. He was seen in the Kaiser Emergency Room, where he tested positive for COVID. He was quarantined for 2 weeks.

He then returned to work with ongoing lower back pain, but no symptoms of COVID infection. He filed a claim for the lower back pain that was apparently denied. He is not sure why because he has experienced back pain for months perhaps as long as a year.

Magnetic resonance scanning of the lumbar spine was accomplished at Kaiser, revealing multiple intervertebral disk abnormalities.

Nicholas Stephens
PAGE 2

DATE OF EXAM: 03/15/2022
CONSULTANT: Dr. Stark

He was advised to return to Concentra, where the doctors indicated that his lower back problem was not work-related. By that time, he was working as a regular loader and weights up to 150 pounds.

About the onset of worsening symptoms, he had transferred to a train driver position where he would drive a forklift-type of equipment towing a train of totes. He would load these totes all day with repetitive bending and lifting.

He stopped working in December 21st with gradual worsening of pain. He returned to work in January of this year, and has continued working without lost time. His job now is a computer job that he did before.

<u>PRESENT COMPLAINTS:</u>

Lower back pain that is constant and bilateral, greater on the left than on the right. There is radiation to the left leg past the knee. He noted numbness and tingling in his great toes and possible weakness in his right leg.

He reported morning stiffness that is brief until he moves about. Sitting and standing are equally bothersome. He knows of no position of comfort when his back is painful.

He reported that his sleep is moderately disturbed with 2-3 hours of sleeplessness per night. His Epworth score is normal.

He is independent in self-care with discomfort. He is able to lift and carry light to medium objects. He is able to walk variable distances, sometimes short distances when flared up, sometimes as much as a mile. His standing and walking tolerance are up to 60 minutes. Sitting is less to 30 minutes.

He has a lot of difficulty with kneeling, bending, and squatting.

He considers his pain to be mild at the moment and moderate most of the time. Numerically, he grades his pain as 7-9/10.

Pain interferes some or little of the time with his ability to do housework, cooking, shopping and concentration. Pain interferes a lot or most of the time with his ability to travel. Pain precludes socialization and recreational activities. He reported mild depression.

<u>MEDICATIONS FOR PAIN:</u> None.

<u>PAST MEDICAL HISTORY:</u> ITP. He has gained 40 pounds.

He does not smoke. He denied alcohol-related. He denied recent illnesses or fevers, but reported a 40-50 pound weight gain.

<u>FAMILY HISTORY OF RECURRENT DISEASE:</u> Positive for ITP and cardiac disease. He has no children.

<u>SOCIAL HISTORY:</u> Born in California. He has worked as a cook at UPS.

Nicholas Stephens
PAGE 3

DATE OF EXAM: 03/15/2022
CONSULTANT: Dr. Stark

## REVIEW OF THE FILE:

Daniel Shu, D.O.
11/05/2021 (1st report of occupational injury). First examination November 4th. Complains of moderate lower back pain while bending and lifting work. He thought that riding in a car without back support was contributing. There have been no traumas. He last worked on October 28th. Diagnosis, chronic lower back pain with radiculopathy. Request authorization for physical therapy.

Kaiser on the job.
11/15/2011 - gradual onset of lower back pain radiating to the right of front thigh.
MRI lumbar spine, disk degeneration at L4-5 and L5-S1 with straightening of the lordosis and normal, but normal vertebral body height. L4-5 disk bulge, mild facet arthropathy and ligamentum flavum thickening causing mild stenosis. At L5-S1 there is a disk bulge and a small annular fissure to the left side. No significant stenosis. Mild right foraminal stenosis. Plan is for physical therapy.

## PHYSICAL EXAMINATION:

Well-developed, well-nourished male, in no acute distress. During the course of our conversation he was able to sit. He transitioned to standing smoothly. His gait and station were normal. The stated height and weight were 6 feet, 1 inches and 190 pounds.

Dorsal Lumbar Spine: The spine was straight without obvious scoliosis. The iliac crests were level. Palpation of the paravertebral musculature revealed symmetrical tone without abnormality. There was bilateral iliolumbar tenderness. Dorsal lumbar spine range of motion was to 75 degrees of forward bending. With double inclinometers, 55 degrees was true lumbar spine flexion. This means that only 20 degrees of hip flexion was accomplished. Side bending and extension were full with back pain being reproduced at the extremes of, right more so than left, lateral extension. Following the range of motion, there was no change in the paravertebral muscle tone.

Straight leg raising was to 90 degrees in the seated position. Supine measurements of 45 degrees were recorded bilaterally. Sciatic stretch maneuvers were negative.

Lower Extremities: Great toe extensor strength was normal. Extensor digitorum brevis bulk was normal. Toe and heel walking was accomplished without difficulty.

Circumferential Measurements

Calves at 6"                    15 "/14-3/4" (right/left)

31

Nicholas Stephens
PAGE 4

DATE OF EXAM: 03/15/2022
CONSULTANT: Dr. Stark

NEUROLOGIC EXAMINATION: Cranial nerves II through XII and cerebellar testing were grossly intact. Deep tendon reflexes were physiologic and symmetrical at the patellar and Achilles levels. There were no release reflexes or dermatomal sensory deficits.

Sensation was intact.

X-rays available for review: Noted is the Kaiser MR report describing degenerative disk disease from L4-S1, with L5-S1 left-sided annular fissure.

ASSESSMENT:

Lower back pain is chronic without verifiable radiculopathy.

DISCUSSION:

Nicholas Stephens worked for UPS performing physically demanding work in 2018. He gradually developed lower back pain that worsened with prolonged sitting or driving a warehouse tractor pulling trailers. Based upon the history provided and records available, Mr. Stephens was injured while working. The cause of injury is work-related.

Typically, the lumbar strain symptoms will resolve. In this case, because Mr. Stephens was repetitively injuring his back, symptoms will probably will last longer.

In fact, based upon multilevel disc disease, it is medically probable that Mr. Stephens has lost some of his capacities for heavy lifting and repetitive bending.

Mr. Stephens is performing his job now that is within his physical capacities.

Where he has to return on the line, doing repetitive bending and lifting, he probably would have to change jobs.

Based on history provided and records available, the lower back condition is permanent and stationary. By this, I mean that I do not anticipate measurable improvement in the foreseeable future.

DRE Lumbar Category II applies with maximally 8% whole person impairment. The maximum of 8% is recommended. The previous job is not within his capacities. The current computer-based job is within his capacities.

Future treatment should include core strengthening and common sense activities, meaning avoidance of heavy lifting, repetitive strenuous activities.

Nicholas Stephens
PAGE 5

DATE OF EXAM: 03/15/2022
CONSULTANT: Dr. Stark

Thank you once again for this referral and for your confidence in me to serve
as AGREED MEDICAL EXAMINER.

Sincerely,

James B. Stark, M.D.

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct
to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that
information, I declare under penalty of perjury that the information accurately describes the information provided to me and,
except as noted herein, that I believe it to be true.

I further declare under penalty of perjury that I have not violated the provisions of California Labor Code Section 139.3 and
that I have not offered, delivered, received, or accepted any re-bate, refund commission, preference, patronage, dividend,
discount, or other compensation, whether in the form of money or otherwise, as compensation or inducement for any referred
examination or evaluation.

I further declare under penalty of perjury that that the bill for my services is true and correct to the best of my knowledge.

I further declare under penalty of perjury that if applicable, I personally reviewed any records submitted, examining the injured
worker and prepared this report by myself without the assistance of other individuals other than for clerical preparation or
translator assistance.

Date of Report: March 15, 2022

Signed this 21st of March, 2021, at San Mateo County, California.

James B. Stark, M.D.

JBS/SI

33

**JAMES B. STARK, M.D., F.A.C.M. & R.**
A Medical Corporation

101 South San Mateo Drive # 215
San Mateo, CA 94401
Telephone: (650) 393-5323

May 10, 2023

Monika Hight, Esquire
Law Office of Monika Hight
P.O. Box 2628
Petaluma, CA 94953

RE: Nicholas Stephens
DOB: 06/11/1990
EMP: United Parcel Service
CLAIM #: WC648-D27827
WCAB #: ADJ15417105; ADJ16006194
DOI: 03/22/2022
DATE OF RE-EXAM: 05/10/2023

Dear Ms. Hight:

Thank you for referring Mr. Stephens, who is now 32 years of age for re-examination. I am copying this report to his prior attorney, Mr. Popalardo, and am emailing the report to Mr. Stephens, who is now representing himself.

I previously examined Mr. Stephens, in the capacity of AGREED MEDICAL EXAMINER, for complaints referable to his lower back on March 15, 2022. More recently, I examined him on October 26, 2022, for complaints referable to multiple anatomical areas and noted, in my October 27, 2022 report, that there was significant changes in his physical examination from a normal neurologic examination to one with hyperreflexia indicative of central nervous system involvement. Central nervous system means brain and/or spinal cord.

Mr. Stephens did undergo the recommended cervical spine magnetic resonance scan on December 13, 2022. Having reviewed images on his laptop computer, and I saw the radiology report, describing a C3-4 disk protrusion compressing the spinal cord with a central canal measurement of 7 mm. At C5-6, there is a bulge. At C6-7, there is a broad-based protrusion with the thecal sac measurement of 8 mm consistent with moderate stenosis.

My assessment was in a March 29, 2023 supplemental report. I recommended neurosurgical consultation because of the hyperreflexia and scan-documented C3-4 cord compression.

Mr. Stephens reported, at the time of this re-examination, that things have not gone well for him. He is homeless and living in his car. He has no income.

Nicholas Stephens                          DATE OF EXAM: 05/10/23
PAGE 2                                      CONSULTANT: Dr. Stark

He did work 2 weeks for the DHL company doing computer work, without
worsening. He was terminated because he had no medical clearance.

Neurosurgical consultation with Dr. Lavery at Kaiser was accomplished.
Surgery, specifically a C3-4 anterior cervical diskectomy with fusion, was
recommended. Mr. Stephens declined the surgical offer.

### PRESENT COMPLAINTS:

Constant, bilateral, left greater than right, neck pain radiating to left
arm with tingling in all fingers. He reported limited range of motion and
headaches.

He reported urinary frequency and some lost urinary control. He reported
lower extremity "twitching."

He reported that his sleep is greatly disturbed with 3-5 hours of
sleeplessness per night. His Epworth score is abnormal at 14 points.

He needs help with self-care. He is only able to lift very light objects.
He is able to walk, but short distances, estimating his standing/walking
tolerance to be 30 minutes at a time. He is able to sit without
limitations. He reported some difficulty reaching to shoulder level and a
lot of difficulty reaching overhead. He reported problems with
manipulating objects and with repetitive activities such as data input.
He reported some difficulty with kneeling, bending and squatting.

He considers his pain to be severe at the moment and moderate most of the
time. Numerically, he grades his pain as 8-10/10.

Pain interferes a lot or most of the time with his ability to travel, do
housework, cooking, shopping and concentration. Pain precludes
socialization and recreation. He reported severe depression.

### PAST MEDICAL HISTORY: Otherwise unchanged.

### REVIEW OF ADDITIONAL MEDICAL RECORDS:

Behvaren D O 7/7/22 — 12/16/22

Kaiser MDs. 2/16/23 - 4/13/23

LeSar B MD. 12/13/22

Schier R. MD. 12/13/22

I additionally received records from the patient, who is now self
represented, including the neurosurgical consultation from Aleksandyr Lavery,
MD, 03/21/2023. There were photocopied images of the cervical spine MRI.

There is an indication that thoracic spine MRI was accomplished and thoracic
spine was normal.

Nicholas Stephens
PAGE 3

DATE OF EXAM: 05/10/23
CONSULTANT: Dr. Stark

MRI of left shoulder, mild acromioclavicular joint arthritis.

MRI lumbar spine, small central protrusion at L5-S1 without neural component.

PHYSICAL EXAMINATION:

Well-developed, well-nourished male in no acute distress. During the course of our conversation, he was able to sit. He held his head quite rigidly without much movement. He appears sad, if not frankly depressed.

Head: Normocephalic without evidence of trauma.

Neck: The trachea was at the midline. There was no adenopathy. The paracervical muscle tone was symmetrically increased. There was diffuse paracervical muscle tenderness. Cervical spine range of motion was normal in flexion. Rotation was 60 degrees/70 degrees (right/left). Lateral flexion was 20 degrees to each side.

Extension was limited to 20 degrees with localized pain being reported on midline extension and foraminal compression testing, bilaterally. Following the range of motion, there was no change in the paracervical muscle tone.

Upper Extremities: Intrinsic strength was normal.

Neurologic: Cranial nerves II through XII and cerebellar testing were grossly intact. Deep tendon reflexes were hypoactive, but symmetrical at the biceps and brachioradialis, hyperactive at the triceps.

ASSESSMENT:

1. C3-4 myelopathy secondary to C3-4 disk herniation.
2. Motion complex instability based upon C3-4 retrolisthesis.

DISCUSSION:

Mr. Stephens presents with serious cervical spine abnormalities, including instability and myelopathy. A neurosurgeon, Dr. Lavery, recommended a single level decompression with arthrodesis. Thus far, Mr. Stephens has declined that option.

Absent surgery, I fear that Mr. Stephens has reached a level of maximum medical improvement. I do not anticipate measurable improvement in the foreseeable future without surgery.

Rating is based upon his myelopathy-related, neurogenic bladder. Table 15-6, on page 397, provides a range of 1-9%. With only occasional "accidents," 5% whole person impairment is recognized.

I will rate the cervical spine based upon range of motion. The DRE Method would not provide an accurate measure of impairment because there is no radiculopathy.

Nicholas Stephens
PAGE 4

DATE OF EXAM: 05/10/23
CONSULTANT: Dr. Stark

Table 15-7, on page 404, provides 6% whole person impairment for diagnosis. This is "unoperated or unstable with medically documented injury."

Table 15-12, on page 418, provides 2% whole person impairment for 20 degrees of retained extension.

Table 15-13, on page 420 provides, 2% whole person impairment for lost lateral flexion in each directions at 4%.

Table 15-14, on page 421, provides 1% whole person impairment for 60 degrees right rotation, and 1% for 70 degrees of left rotation. Total impairment based upon decreased range of motion equals 8% whole person.

That 8% is added to the 6% for diagnosis to equal 14% whole person impairment.

Based upon the history provided and records available there is no basis for apportionment.

For the sake of clarity, I am providing this permanent impairment rating based upon Mr. Stephens' declining cervical spine surgery. If he proceeds with surgery, there will be additional temporary total disability for 6 months. Following that 6-month period, he should be re-examined for final impairment considerations.

Thank you once again for referring Mr. Stephens.

Sincerely,

James B. Stark, M.D.

Billing reflects a Follow-up Medical-Legal Evaluation occurring within eighteen months following the previous comprehensive medical-legal evaluation, with the AME modifier, ML202-94.

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.

I further declare under penalty of perjury that I have not violated the provisions of California Labor Code Section 139.3 and that I have not offered, delivered, received, or accepted any re-bate, refund commission, preference, patronage, dividend, discount, or other compensation, whether in the form of money or otherwise, as compensation or inducement for any referred examination or evaluation.

I further declare under penalty of perjury that that the bill for my services is true and correct to the best of my knowledge.

Nicholas Stephens
PAGE 5

DATE OF EXAM: 05/10/23
CONSULTANT: Dr. Stark

I further declare under penalty of perjury that if applicable, I personally reviewed any records submitted, examining the injured worker and prepared this report by myself without the assistance of other individuals other than for clerical preparation or translator assistance.

Date of report:  May 10, 2023

Signed this 11th of May, 2023, at San Mateo County, California.

James B. Stark, M.D.

JBS/LI

CC:    Dennis A. Popalardo, Esquire
       Boxer & Gerson
       300 Frank H. Ogawa Plaza, Suite 500
       Oakland, CA  94612

       Nicholas Stephens
       Email: nickstephens120@yahoo.com



# Rapid Brain Injury Analysis

Clinical Neurology Director: Dr. David W. Brandes MS, MD, FAAN, FANA
Board Certified: American Board of Psychiatry & Neurology
Fellow American Academy of Neurology • Fellow American Neurological Association
Fellow American Heart Association, Stroke Council • MS Certified Specialist, CMSC
Past Assistant Clinical Professor, UCLA • Clinical Instructor, South College

**PATIENT:** Nicholas Stephens
**DOB:** 06/11/1990
**DOI:** 03/22/2022
**EXAM DATE:** August 16, 2023

## COMPLEX COMPREHENSIVE NEUROLOGICAL EVALUATION

This evaluation was performed using a secure telehealth HIPAA compliant Zoom platform.

This patient is a 33-year-old right-handed Caucasian male who is a union representative/multi-task worker. He is being seen for evaluation of injuries that he sustained in an assault on March 22, 2022.

The patient states that he was working at United Parcel Service and had to ask a supervisor to stop working at a particular task *"due to union rules."* However, this coworker *"got upset with him."* He states that this coworker was waiting for him in the parking lot when the patient went out to his car on lunch break. They got into an altercation and the coworker punched the patient on the left side of his head repeatedly. He had a dislocation of the left jaw and left collarbone because of multiple injuries. He also was briefly unconscious and dropped to the ground, hitting his head on the concrete, and then he suddenly *"woke up."*

The patient was able to drive himself after this injury to an emergency room about one mile from the site of his injury. This was at Kaiser Hospital in San Leandro, CA. He states that in the emergency room they *"reset my jaw and shoulder."* He also stated that he was *"drugged up good"* because of his ongoing pain. The patient states that his mother had come to the emergency room and she took him home.

Since the injury, the patient states that he has had to struggle with the *"vagaries"* of dealing with workman's compensation for appointments and approvals for care, as well as other adjudications since the date of the injury. He does report that he was able to return to work for a short time from about December of 2022 to January 2023. But then had to be taken off work because of his ongoing symptoms.

He states that following the injury he has suffered from a number of problems, including *"shooting pain in the left eye"* as well as occasional headaches, vertigo, and tinnitus. He also notes numbness and tingling in his arms and legs. He states that from time to time while holding something in either his right or left hand, he will drop it. He also suffers from ongoing bouts of anxiety and panic. On further questioning, he has noted that he has impairment of his short-term memory and that his *"mind is slower."* He also reports

EXAM DATE: August 16, 2023
PATIENT: Nicholas Stephens

difficulty sleeping due to pain, anxiety, or both. He only sleeps about 3 to 4 hours per night, he thinks.

Since his injury he has not been able to work except for the brief time noted above. He currently is *"living in my car."* He states that he has been on some sort of workers compensation disability stipend through the state of California. He is currently not taking any medications. In the past he was prescribed some sort of muscle relaxant, but he felt that these pills *"trigger panic attacks."* He is currently receiving no treatment for any of his conditions.

The patient reports that he has no prior incidents causing head injuries, except for a few he received during football as a teenager. However, none of these caused loss of consciousness and he had no sequelae from any of these mild injuries. He attributes none of his current symptoms to these earlier incidents. He has had no subsequent head injuries since these injuries as a teenager.

The patient does report that he was followed up at a Bay Area pain and spine center and also has been going to Kaiser Hospital intermittently for his ongoing symptoms.

**PAST MEDICAL HISTORY:** The patient has a history of a blood disorder called thrombocytopenia. He is on no medications for this. This was diagnosed in about 2014 or 2015. He has no other medical problems.

He does report that he was diagnosed with a cervical spine problem after the injury noted above, and had a cervical fusion in about December of 2022 or January 2023 for that pain. As noted above, he has been off work since that time.

**PHYSICAL EXAMINATION:**
**General:** Well developed, well-nourished Caucasian male in no obvious acute distress.
**Head:** Normocephalic.
**Neck:** Range of motion is full.

**NEUROLOGICAL EXAMINATION:**
**Mental status:** Awake, alert, oriented to time, place and person, except that he is one day off on the date. He was able to recite the current and previous two Presidents correctly. He can recall three of three objects after several minutes. He can calculate the dollar equivalent of 20 nickels and the number of nickels in $3, but was somewhat slow. He could spell the word *world* forwards correctly, but was unable to spell it backwards correctly. There is no right-left confusion, finger agnosia, dysnomia or aphasia.

**Cranial Nerves:**
III/IV/VI -- Extraocular movements are conjugate and full in all directions without nystagmus.
V -- Normal sensation to light touch in all 3 distributions bilaterally.
VII -- No facial asymmetry.

Rapid Brain Injury Analysis          Dr. David W. Brandes          Page 3
Continuation Sheet

EXAM DATE: August 16, 2023
PATIENT: Nicholas Stephens

VIII – Able to hear finger rub on the right, but cannot hear it on his left ear. He does state that he has "*ringing*" in his left ear.

IX/X – Palate elevates symmetrically bilaterally with phonation.

XI – Moderate limitation of right and left rotation due to pain. There is also slight limitation of forward flexion, but extension appears normal.

XII – Tongue protrudes in the midline. No atrophy, fasciculations or dysarthria.

**Motor:** Muscle bulk appears normal in distal upper extremities bilaterally. There are no abnormal involuntary movements. He moves all four extremities normally and equally.

**Coordination:** Finger-nose-finger is very slightly impaired in both upper extremities. Rapid alternating movements are mildly to moderately impaired equally in both upper extremities.

**Gait:** The patient is slightly unsteady on gait and also is slightly unsteady on tandem gait, but does not fall off balance generally. However he did occasionally have rare falls with prolonged walking.

**Station:** Romberg normal with the eyes open. He is unsteady with the eyes closed, but does not fall.

**DIAGNOSTIC IMPRESSION:**
1. Probable traumatic brain injury secondary to the above indicated accident.
2. Cervical spine injury with residual bilateral upper extremity symptoms.

**CASE DISCUSSION:** This patient has ongoing symptoms of cognitive impairment, and his neurological examination is mildly abnormal. These symptoms and his history, as well as the findings would be consistent with traumatic brain injury as a result of the accident that he was involved in on 3/22/22. I have recommended that he undergo an EEG/ERP study to assess for evidence of microscopic damage to the brain. He states that the previous MRI didn't not show any obvious injuries, but microscopic damage may not be seen on this study.

If the study is abnormal, then I would recommend that he have ongoing neurological follow up with regards to his cognitive dysfunction and further treatment of his cognitive memory dysfunction may be helpful.



David W. Brandes, M.S., M.D.
Assistant Clinical Professor, UCLA
DWB/gg

# Rapid Brain Injury Analysis EEG/ERP Patient Report

## EEG/ERP Patient Report

| Physician/Practice Information: | Patient Information: | |
|---|---|---|
| Rapid Brain Injury Analysis<br>36144 42nd Street East<br>Palmdale CA 93552 | Name: | Nicholas Stephens |
| | ID: | 26409 |
| | Birth Date: | 06/11/1990 |
| **Supervising Technician:**    Donna Meeks DC | **Study Information:** | |
| **Ordering Physician:**    David Brandes MD | Order Notes: | |
| *Interpreting Physician* | Data Set ID: | 37936 |
| *[signature]* | Date Uploaded: | 08/28/2023 |

**Test Notes:**

**Study Findings:**

An audiogram was performed and a slight hearing deficit was noted in the left ear. Unilateral hearing deficits do not affect the reliability of the study data results.
Task Performance Results demonstrated normal Button Press Accuracy and markedly prolonged Median Reaction Time, consistent with impaired stimulus processing and executive function. False Alarms were in the normal range.
The P50 Standard Peak Amplitude is normal.
The N100 Standard Peak Amplitude is normal.
The N100 Standard Peak Latency is significantly increased.
The P200 Standard Peak Amplitude is normal.
The N200 Target Peak Amplitude has significantly decreased, suggesting possible suboptimal brain processing for executive function. Peak Latency is normal.
The P3b Target Peak Amplitude is normal. The P3b Latency is normal.
The Slow Wave Target is significantly decreased which is consistent with possibly requiring more time for stimulus processing. Latency is normal.
The P3a Distractor Peak Amplitude is normal. The P3a Distractor Peak Latency is normal.
The Peak Alpha Frequency is normal.
There is a significant right-left asymmetry noted in the frontal and parietal electrodes with the left side being decreased compared to the right. In the context of Traumatic Brain Injury (TBI), it likely indicates there is also a localized trauma in the left frontal and parietal regions.

This patient, a 33 year old male, was an assault victim on 3/22/2022. He got into an altercation with a coworker who punched the patient on the left side of his head repeatedly, dislocating the patient's jaw and collarbone. The patient went briefly unconscious and dropped to the ground hitting his head on the concrete. The patient went to an ER where they reset his jaw and shoulder. In February of 2023 he got an MRI scan of his brain. At this time the patient suffers from a shooting pain in the left eye, occasional headaches, vertigo, tinnitus, numbness and tingling in his arms and legs. He suffers from bouts of anxiety and panic attacks. He states that he now has short-term memory loss and his mind is slower. He has trouble sleeping. The patient states that he has had no prior incidents involving head injuries except for a few received while playing football as a teenager. He attributes no symptoms to these early incidents. He has had no subsequent head injuries. He did not have any medications, drugs, alcohol or caffeine within 12 hours of this TBI test.

CLINICAL IMPRESSION: The EEG/ERP Study demonstrates that this patient has a significant traumatic brain injury (TBI) with impairment of executive function and stimulus processing .There is a significant right-left asymmetry noted in the frontal and parietal electrodes with the left side being decreased compared to the right. In the context of Traumatic Brain Injury (TBI), it likely indicates there is also a localized trauma in the left frontal and parietal regions. Based on the available history, the symptoms of impaired cognitive function have been present only after the injury listed above and it is medically probable that the documented cognitive impairment seen in the EEG/ERP test is due to a traumatic brain injury (TBI) that occurred in the accident. It is recommended that this person should be considered for continued evaluation and treatment by a specialist in brain function, such as a neurologist and/or neuropsychologist. In addition, if not already done, formal neuro-cognitive testing should be considered.
David W. Brandes, MS, MD, FAAN, FAHA

**Study Protocol:**

Auditory_Oddball_Active_3_03

| Test Name | Test Description | Patient Instructions |
|---|---|---|
| Auditory_Oddball_Training_2_01 | | Press button with your dominant hand (red button for right-handed and blue button for left-handed) when you hear the high-pitched tone. |
| Auditory_Oddball_Active_3_01 | | Press button with your dominant hand (red button for right-handed and blue button for left-handed) when you hear the high-pitched tone. |
| EEG | EEG capture | |
| EEG | | |

**Rapid Brain Injury Analysis**     **Patient:** Nicholas Stephens     Date: 08/26/2023

| Physician/Practice Information: | | Patient Information: | |
|---|---|---|---|
| Rapid Brain Injury Analysis | | Name: | Nicholas Stephens |
| 36144 42nd Street East | | ID: | 28409 |
| Palmdale CA 93552 | | Birth Date: | 06/11/1990 |
| Supervising Technician: | Donna Meeks DC | Study Information: | |
| Treating Physician: | David Brandes MD | Order Notes: | |
| | | Date Uploaded: | 08/26/2023 |

**Test Name:**

Auditory_Oddball_Active_3_01

### TASK PERFORMANCE

| Feature | Value |
|---|---|
| Button Press Accuracy (%) | 98.3 |
| False Alarms (%) | 0.3 |
| Median Reaction Time (ms) | 512.0 |

### ERP FEATURES

| Feature | Stimulus | Amplitude (µV) | Latency (ms) | Avg Amplitude (µV) |
|---|---|---|---|---|
| P50 | Standard | 1.15 | 28.6 | -1.58 |
| N100 | Standard | -8.95 | 109.7 | -5.47 |
| P200 | Standard | 9.85 | 176.0 | 4.47 |
| N200 | Target | -6.81 | 216.0 | -2.31 |
| P3b | Target | 8.42 | 332.0 | 2.40 |
| SW | Target | -8.01 | 436.8 | -1.88 |
| P3a | Distractor | 7.02 | 304.0 | 3.55 |

**Rapid Brain Injury Analysis**          **Patient:** Nicholas Stephens          **Date:** 08/26/2023



Rapid Brain Injury Analysis          Patient: Nicholas Stephens          Date: 08/26/2023



| Physician/Practice Information: | | Patient Information: | |
|---|---|---|---|
| Rapid Brain Injury Analysis | | Name: | Nicholas Stephens |
| 36144 42nd Street East | | ID: | 28409 |
| Palmdale CA 93552 | | Birth Date: | 08/11/1980 |
| Supervising Technician: | Donna Meeks DC | **Study Information:** | |
| Treating Physician: | David Brandes MD | Order Notes: | |
| | | Date Uploaded: | 08/26/2023 |

**Test Name:**

EEG

| EEG FEATURES | | |
|---|---|---|
| *Feature* | *Peak Frequency* | *Power* |
| Peak Alpha | 10.13 | 253.6 |

**EEG POWER SPECTRUM**

| P3 | Pz | P4 |
|---|---|---|

**Rapid Brain Injury Analysis**          **Patient:** Nicholas Stephens          **Date:** 08/26/2023



**Rapid Brain Injury Analysis**      Patient: Nicholas Stephens      Date: 08/26/2023

| Physician/Practice Information: | | Patient Information: | |
|---|---|---|---|
| Rapid Brain Injury Analysis | | Name: | Nicholas Stephens |
| 36144 42nd Street East | | ID: | 28409 |
| Palmdale CA 83552 | | Birth Date: | 06/11/1980 |
| Supervising Technician: | Donna Meeks DC | **Study Information:** | |
| Treating Physician: | David Brandes MD | Order Notes: | |
| | | Date Uploaded: | 08/26/2023 |

**Test Name:**

Pure Tone Audiometry



# Rapid Brain Injury Analysis EEG/ERP Patient Report

## EEG/ERP Patient Report

| Physician/Practice Information: | | Patient Information: | |
|---|---|---|---|
| Rapid Brain Injury Analysis | | Name: | Nicholas Stephens |
| 36144 42nd Street East | | ID: | 28409 |
| Palmdale CA 93552 | | Birth Date: | 06/11/1990 |
| Supervising Technician: | Donna Meeks DC | **Study Information:** | |
| Ordering Physician: | David Brandes MD | Order Notes: | |
| Interpreting Physician | | Data-Set ID: | 37936 |
| | | Date Uploaded: | 08/26/2023 |

**Test Notes:**

**Study Findings:**

An audiogram was performed and a slight hearing deficit was noted in the left ear. Unilateral hearing deficits do not affect the reliability of the study data results.

Task Performance Results demonstrated normal Button Press Accuracy and markedly prolonged Median Reaction Time, consistent with impaired stimulus processing and executive function. False Alarms were in the normal range.

The P50 Standard Peak Amplitude is normal.
The N100 Standard Peak Amplitude is normal.
The N100 Standard Peak Latency is significantly increased.
The P200 Standard Peak Latency is normal.
The N200 Target Peak Amplitude has significantly decreased, suggesting possible suboptimal brain processing for executive function. Peak Latency is normal.
The P3b Target Peak Amplitude is normal. The P3b Latency is normal.
The Slow Wave Target is significantly decreased which is consistent with possibly requiring more time for stimulus processing. Latency is normal.
The P3a Distractor Peak Amplitude is normal. The P3a Distractor Peak Latency is normal.
The Peak Alpha Frequency is normal.

There is a significant right-left asymmetry noted in the frontal and parietal electrodes with the left side being decreased compared to the right. In the context of Traumatic Brain Injury (TBI), it likely indicates there is also a localized trauma in the left frontal and parietal regions.

This patient, a 33 year old male, was an assault victim on 3/22/2022. He got into an altercation with a coworker who punched the patient on the left side of his head repeatedly, dislocating the patient's jaw and collarbone. The patient went briefly unconscious and dropped to the ground hitting his head on the concrete. The patient went to an ER where they reset his jaw and shoulder. In February of 2023 he got an MRI scan of his brain. At this time the patient suffers from a shooting pain in the left eye, occasional headaches, vertigo, tinnitus, numbness and tingling in his arms and legs. He suffers from bouts of anxiety and panic attacks. He states that he now has short-term memory loss and his mind is slower. He has trouble sleeping. The patient states that he has had no prior incidents involving head injuries except for a few received while playing football as a teenager. He attributes no symptoms to these early incidents. He has had no subsequent head injuries. He did not have any medications, drugs, alcohol or caffeine within 12 hours of this TBI test.

CLINICAL IMPRESSION: The EEG/ERP Study demonstrates that this patient has a significant traumatic brain injury (TBI) with impairment of executive function and stimulus processing. There is a significant right-left asymmetry noted in the frontal and parietal electrodes with the left side being decreased compared to the right. In the context of Traumatic Brain Injury (TBI), it likely indicates there is also a localized trauma in the left frontal and parietal regions. Based on the available history, the symptoms of impaired cognitive function have been present only after the injury listed above and it is medically probable that the documented cognitive impairment seen in the EEG/ERP test is due to a traumatic brain injury (TBI) that occurred in the accident. It is recommended that this person should be considered for continued evaluation and treatment by a specialist in brain function, such as a neurologist and/or neuropsychologist. In addition, if not already done, formal neuro-cognitive testing should be considered.
David W. Brandes, MS, MD, FAAN, FAHA

**Study Protocol:**

Auditory_Oddball_Active_3_03

| Test Name | Test Description | Patient Instructions |
|---|---|---|
| Auditory_Oddball_Training_2_01 | | Press button with your dominant hand (red button for right-handed and blue button for left-handed) when you hear the high-pitched tone. |
| Auditory_Oddball_Active_3_01 | | Press button with your dominant hand (red button for right-handed and blue button for left-handed) when you hear the high-pitched tone. |
| EEG | EEG capture | |
| EEG | | |

**Rapid Brain Injury Analysis**       Patient: Nicholas Stephens       Date: 08/26/2023

| Physician/Practice Information: | | Patient Information: | |
|---|---|---|---|
| Rapid Brain Injury Analysis<br>36144 42nd Street East<br>Palmdale CA 93552 | | Name: | Nicholas Stephens |
| | | ID: | 28409 |
| | | Birth Date: | 06/11/1990 |
| Supervising Technician: | Donna Meeks DC | **Study Information:** | |
| Treating Physician: | David Brandes MD | Order Notes: | |
| | | Date Uploaded: | 08/26/2023 |

**Test Name:**

Auditory_Oddball_Active_3_01

| TASK PERFORMANCE | |
|---|---|
| *Feature* | *Value* |
| Button Press Accuracy (%) | 98.3 |
| False Alarms (%) | 0.3 |
| Median Reaction Time (ms) | 512.0 |

| ERP FEATURES | | | | |
|---|---|---|---|---|
| *Feature* | *Stimulus* | *Amplitude (µV)* | *Latency (ms)* | *Avg Amplitude (µV)* |
| P50 | Standard | 1.15 | 28.6 | -1.58 |
| N100 | Standard | -3.95 | 109.7 | -5.47 |
| P200 | Standard | 9.85 | 176.0 | 4.47 |
| N200 | Target | -6.81 | 216.0 | -2.31 |
| P3b | Target | 8.42 | 332.0 | 2.40 |
| SW | Target | -8.01 | 436.8 | -1.88 |
| P3a | Distractor | 7.02 | 304.0 | 3.55 |



**Rapid Brain Injury Analysis**          **Patient:** Nicholas Stephens          **Date:** 08/26/2023



| Physician/Practice Information: | | Patient Information: | |
|---|---|---|---|
| Rapid Brain Injury Analysis | | Name: | Nicholas Stephens |
| 36144 42nd Street East | | ID: | 28409 |
| Palmdale CA 93552 | | Birth Date: | 06/11/1990 |
| Supervising Technician: | Donna Meeks DC | **Study Information:** | |
| Treating Physician: | David Brandes MD | Order Notes: | |
| | | Date Uploaded: | 08/26/2023 |

**Test Name:**

EEG

**EEG FEATURES**

| Feature | Peak Frequency | Power |
|---|---|---|
| Peak Alpha | 10.13 | 253.6 |

**EEG POWER SPECTRUM**



**Rapid Brain Injury Analysis**        Patient: Nicholas Stephens        Date: 08/26/2023

