1  Nicholas C. Stephens
2  19983 Forest Avenue, Apt. 1
   Castro Valley, CA 94546
3  *Tel* 510.586.4420   *Email* nickstephens120@yahoo.com

4  Pro Se or Self-Represented

**FILED**

DEC 29 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6  # UNITED STATES DISTRICT COURT

7  # NORTHERN DISTRICT OF CALIFORNIA

8  ## Division Oakland

9

10  **NICHOLAS C. STEPHENS,**               ) Case No.   **4:23-cv-06081-DMR**
                                            )
11             *Plaintiff,*                 ) **PLAINTIFF NICHOLAS C. STEPHENS'**
                                            ) **OPPOSITION TO DEFENDANT UNITED**
12                                          ) **PARCEL SERVICES INC.'S MOTION TO**
    vs.                                     ) **DISMISS**
13                                          )
                                            )
14  **UNITED PARCEL SERVICES, INC., a**     )
15  **corporation; LIBERTY MUTUAL**         )
    **INSURANCE COMPANY; and DOES 1**       )
16  **through 25, *inclusive*,**            ) Date:  January 11, 2024
                                            ) Time: 9:00 a.m.
17                                          ) Dept.:
                                            )
18             *Defendants.*                )
    ==========================//

19

20  **I.**                    **INTRODUCTION**

21       Plaintiff Nicholas Stephens, who is *in pro per*, vigorously opposes Defendant

22  United Parcel Services, Inc.'s Motion to Dismiss his Complaint and, in effect, to silence

23  him forever.

24       Plaintiff contends that the three "*independent*" reasons given by Defendant as to

25
26  why Plaintiff's Complaint should be dismissed is tenuous and legally inapposite. Under

27  federal law, the standard of review applied by the Court is to examine the pleadings in the

28  OPPOSITION TO MOTION TO DISMISS
    CASE NO.: 4:23-cv-06081-DMR                              PAGE _1_ OF __11__

1
2   light most favorable to the Complainant to determine whether the pleadings are sufficient
3   or insufficient and, in the latter instance, may be dismissed. (*See Ashcroft v. Iqbal (2009)*
4   *129 S. Ct. 1937 and Bell Atlantic Corp. v. Twombly (2007) 550 U.S. 544.*)  The federal
5   courts have routinely viewed motions to dismiss as summary judgment motions or as
6   demurrers, either working to dispose of the case altogether or to provide the Complainant
7
8   with a final opportunity to amend his Complaint and hopefully state with considerably
9   more linguistic precision and detail the gravamen of his claims. By the court requiring
10  Complainant to amend, Defendant can then better assess why he has been sued and how
11  he should answer that suit. Thus, Defendant United Parcel Services, Inc.'s first reason
12
13  why dismissal is proper, namely owing to Plaintiff Nicholas Stephens' failure to use the
14  proper (pleading) format for his Complaint is tenuous and can easily be cured by
15  amending the Complaint.

16      Defendant United Parcel Services Inc.'s second reason as to why its motion to
17  dismiss should be granted is based on the exclusivity doctrine in workers' compensation
18
19  law. Defendant argues that Plaintiff Stephens' alleged injuries were caused solely by the
20  performance of his job duties and tasks. However, Plaintiff Stephens clearly indicates that
21  he was the victim of a violent assault which occurred at his place of employment and
22  which resulted in great bodily injury. Plaintiff Stephens' use of a Judicial Council form or
23  format (*admittedly suitable for use in state courts*) nonetheless makes it clear that his
24
25  serious bodily injuries arose from an assault, not injuries accrued over time and caused
26  exclusively by his performance of duties, tasks or obligations integral and incident to his
27  employment with Defendant United Parcel Services, Inc.
28  OPPOSITION TO MOTION TO DISMISS
    CASE NO.: 4:23-cv-06081-DMR                                    PAGE _2_ OF __11__

1

2    Although it is factually true that Plaintiff Stephens was at one point the recipient

3    of workers compensation benefits from March 22, 2022 to June 22, 2022, those benefits

4    were related to the assault resulting in great bodily injury that Plaintiff suffered at the

5    hands of a UPS supervisor, complains of here, and sues for redress presently. (*See*

6    *Defendant UPS's Exhibit A, a copy of sundry relevant documents in Plaintiff's ongoing*

7    *quest for redress against Defendant UPS. Kindly focus your attention on pages 23-24,*

8    *Lines 1-7 on Page 23 and Lines 1-13 on Page 24 of Exhibit A, Nicholas Stephens'*

9

10   *Confidential Witness Affidavit [CWA].*) It appears that UPS deceptively encouraged

11   Plaintiff to pursue workers compensation benefits for a workplace injury caused by a

12   violent assault. In his CWA, Plaintiff gives a brief history of his interaction with

13   Defendant UPS, stating that he was essentially forced to resign and then re-hired.

14

15   Plaintiff Stephens in his CWA states undeniably: **"I was injured at work in March**

16   **2022 by getting assaulted by a supervisor."** (*Defendant UPS's Exhibit A, Page 24, Line*

17   *4 of the CWA.*) Further, Plaintiff Stephens received medical treatment from a licensed

18   physician for injuries caused by the assault perpetrated by the UPS supervisor. (*See*

19

20   *Defendant UPS's Exhibit A, a copy of Rapid Brain Injury Analysis [RBIA], Page 38,*

21   *Paragraph Three.*)

22           The patient states that he was working at United Parcel Services
            and had to ask a supervisor to stop performing at a particular task
23           *"due to union rules."* However, this co-worker "got upset with him.
            He states that this co-worker was waiting for him in the parking lot
24           when the patient went out to his car on his lunch break. They got
            into an altercation and the co-worker punched the patient on the left
25           side of his head repeatedly. He had a dislocation of the left jaw and
            left collarbone because of multiple injuries. He also was briefly
26           unconscious and dropped to the ground, hitting his head on the
            concrete, and then he suddenly *"woke up."* [Def. Exhibit A.]
27

28   OPPOSITION TO MOTION TO DISMISS
     CASE NO.:    4:23-cv-06081-DMR                    PAGE _3_ OF _11_

1
2    Additionally, Plaintiff Stephens' Judicial Council Form PLD-PI-0011, that he filed in

3    state court on October 13, 2023, alleges on the Page 1 of the title or caption that his

4    claims are "**[x] OTHER (*specify*) assault W/GBI/Hate Crime.**" (*See Defendant UPS's*

5    *Exhibit A, page 1*.) Next, there is the Oakland Police Report of the felony assault

6    incident, which is more evidence that the incident did occur, and Plaintiff was injured as

7
     a result of workplace violence. Finally, there is the video proof of the assault. The video
8
9    was obtained from Defendant United Parcel Services, Inc.'s workers compensation

10   insurance attorney, Ms. Monica Heights. The video, according to Attorney Heights, was

11   edited and what appears on the video attached to this Opposition is much less shocking

12
     than what Plaintiff Stephens watched when he was shown the unedited video by the UPS
13
14   security guard immediately after the incident.

15         The upshot of all these new pieces of evidence is that the exclusivity doctrine

16   under workers' compensation is inapplicable when the injury to the employee was caused

17   by intentional tort or workplace violence. (*See California Civil Code §2338 – workplace*

18
     *violence & assault not covered by workers compensation and U.S.C. 241. – conspiracy to*
19
20   *commit felony (assault)*). Consequently, Plaintiff Stephens contends that Defendant

21   United Parcel Services, Inc.'s second reason to justify dismissal of Plaintiff's Complaint

22   is also tenuous and legally inapposite. The exclusivity doctrine under workers

23   compensation framework does not apply to workplace violence of the kind that Plaintiff
24
     Stephens was subjected by a supervisor and agent of UPS, acting within the scope of his
25
26   employment.

27

28   OPPOSITION TO MOTION TO DISMISS
     CASE NO.: 4:23-cv-06081-DMR                                    PAGE _4_ OF _11_

1
2    This is an action that was filed by a former employee of United Parcel Services,

3    Inc., who was violently assaulted by another UPS employee that held a supervisory role

4    or position in the corporation and who, in the course of exercising his supervisory duties,

5    physically attacked and seriously injured the former employee for merely having verbally

6
7    admonished the supervisor that he is 'prohibited' from interfering with packages and

8    parcels that are being routed and conveyed on the conveyor belt to their destinations on

9    delivery trucks or loading docks. Plaintiff alleged that Defendant United Parcel Services,

10   Inc. was negligent in how it handled this undeniable incident of workplace violence,

11
12   including its acts of ratification in committing spoliation of evidence, protecting the

13   offending, violent supervisor, denying that the incident ever occurred by claiming that

14   there was no video of the assault that was captured by the numerous surveillance cameras

15   at the UPS facility, claiming that Plaintiff's serious bodily injuries were the result of

16   years of cumulative workplace stress and exertions from lifting, and worse of all,

17   terminating Plaintiff for pursuing redress for his injuries in a court of law.

18
19       Here, Plaintiff Nicholas Stephens opposes Defendant United Parcel Services,

20   Inc.'s Motion to Dismiss his Complaint and to silence him forever.

21   **II.**                **FACTUAL BACKGROUND**

22       Succinctly stated, this action arose from an event involving workplace violence.

23       On March 22, 2022, Plaintiff Nicholas C. Stephens was at his usual place of

24
25   employment, namely the Oakland facility or hub of United Parcel Services, Inc. Plaintiff

26   Stephens was performing his routine employment tasks and duties of segregating parcels

27   and packages on a conveyor belt, supervising other employees, monitoring, and checking

28   OPPOSITION TO MOTION TO DISMISS
     CASE NO.:    4:23-cv-06081-DMR                    PAGE _5_ OF _11_

1   to ensure that the packages and parcels were being properly routed and loaded onto the

2   correct delivery trucks. While performing these multiple employment tasks and duties,

3   Plaintiff Stephens noticed that an individual whom he did not recognize was interfering

4   and disrupting the flow of packages and parcels by removing random parcels and

5

6   packages from the conveyor belt. Plaintiff Stephens asked the unknown employee to stop,

7   that he himself was handling and monitoring the steady flow of parcels and packages on

8   the conveyor belt and that he did not need any help.

9
         The individual, apparently offended by Plaintiff Stephen's admonition, began
10
11  cursing and swearing loudly and directly at Plaintiff Stephens, who was separated by the

12  conveyor belt. The individual yelled something to the effect that **". . . this is my building**

13  **and I run this fucking place! Ain't no white boy gonna tell me what to do in my**

14  **building!"** The individual then crossed underneath the conveyor belt and walked briskly

15
    up to Plaintiff Stephens and pointing his finger in Plaintiff Stephens' face, continued his
16
17  tirade of cursing and swearing and shouting profanities and threats to Plaintiff Stephens.

18       Plaintiff Stephens retreated, as a female supervisor, Courtney, hearing the loud

19  cursing and commotion by the unknown employee, rushed over to intervene because as

20  Plaintiff Stephens retreated, the unknown employee followed closely behind him and

21
    continued to utter threats and curses at Plaintiff's backside. Plaintiff Stephens turned
22
23  briefly, while retreating, to observe that the female supervisor, Courtney, was restraining

24  the unknown employee, having grabbed him by his arm. Plaintiff Stephens then

25  continued retreating and went directly back to his work area. Within minutes, Supervisor

26  Eric Smith approached Plaintiff. Plaintiff handed Supervisor Smith an hand-written

27
28  OPPOSITION TO MOTION TO DISMISS
    CASE NO.:  4:23-cv-06081-DMR                              PAGE _6_ OF _11_

grievance or complaint. Supervisor Smith immediately began discouraging Plaintiff from

filing a grievance, by stating that **". . . he's my cousin. I will handle this privately.**

**Don't do this, Nick. I can handle this."** Eric Smith, cousin of Martin (aggressor) –

Plaintiff had been assigned 'building inspection privileges' in which he is entrusted with

making sure that the area of his shift duties is safe and free from OSHA violations. Anti-

union activities violate federal law and false imprisonment violates state statutory law.

## PROCEDURAL HISTORY

5.      This action began in state court, or in the Alameda County Superior Court on

October 16, 2023, when Plaintiff Nicholas Stephens filed his Complaint for General

Negligence, Intentional Tort, Premises Liability, Assault with Great Bodily Injury, and

Professional Misconduct. Defendant UPS filed a Motion for Change of Venue to move

this action to federal court and that motion was granted.

**III.**           **ARGUMENT**

The Basic Law:

In California, an employer is vicariously liable for the negligent and wrongful acts

of his employees that are committed within the scope of employment. Thus, even if the

employer did nothing wrong and was not negligent itself, if the employee was negligent

or acting wrongful and a party is injured, the employer is liable. California Civil Code

§2338 (Unless required by or under the authority of law to employ that particular agent, a

principal is responsible to third persons for the negligence of his agent in transaction of

the business of the agency, including wrongful acts committed by such agent in and as a

part of the transaction of such business, and for his willful omission to fulfill the

OPPOSITION TO MOTION TO DISMISS
CASE NO.:     4:23-cv-06081-DMR                    PAGE _7_ OF _11_

obligations of the principal.") See also Carr v. Wm. C. Crowell Co. (1946) 28 Cal. 2d 652, 654 ("It is settled that an employer is liable for willful and malicious torts of his employee committed in the scope of the employment.")

Whether an employee is acting within the scope of his employment is viewed broadly. John R. v. Oakland Unified Sch. Dist. (1989) 48 Cal. 3d 438, 447: "The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer. [Citation.]" The Personal Business Test:

Note that the employer is not liable if the employee substantially departs from his or her duties for purely personal reasons, but ". . . where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer.'" Carr at 654. Farmers Ins. Grp. V. County of Santa Clara (1995) 11 Cal. 4th 992, 1004.

"[A]n employee's tortious act may be within the scope of employment even if it contravenes an express company rule and confers no benefit to the employer." Farmers at 1004; See also Perez v. Van Groningen & Sons, Inc. (1986) 41 Cal. 3d 962, 970 ("the proper inquiry is not "whether the wrongful act itself was authorized but whether it was committed in the course of a series of acts of the agent which were authorized by the principal.") John R. v. Oakland Unified Sch. Dist. (1989) 48 Cal. 3d 438, 463-64 ("an employer can be liable for his employee's unauthorized intentional torts committed

1
2   within the scope of employment despite lack of benefit to the employer.") Moreover,
3   even though the employee may be serving his own interests, the employer may still be
4   liable if those personal motivations were generated by or an outgrowth of workplace
5   responsibilities, conditions, or events. Lisa M. v. Henry Mayo Newhall Mem'l. Hosp.
6
    (1995) 12 Cal. 4th 291, 301-02. The key issue is whether the employee's acts were
7
8   foreseeable as it relates to the employee's scope of employment.
9   However, if the employee's actions were entirely for personal purposes and "substantially
10  deviates" from his employment duties, then the employer may not be held vicarious
11  liable. Farmers at 1004-05.
12
    For example, "if the employee 'inflicts an injury out of personal malice, not engendered
13
14  by the employment' or acts out 'personal malice unconnected with the employment', or if
15  the misconduct is not an 'outgrowth' of the employment, the employee is not acting
16  within the scope of employment. Stated another way, "[i]f an employee's tort is personal
17  in nature, mere presence at the place of employment and attendance to occupational
18
    duties prior or subsequent to the offense will not give rise to a cause of action against the
19
20  employer under the doctrine of respondeat superior.' In such cases, the losses do not
21  foreseeably result from the conduct of the employer's enterprise and so are not fairly
22  attributable to the employer as a cost of doing business." Id.
23
    Additionally, "an employer may be liable for an employee's act where the employer
24
25  either authorized the tortious act or subsequently ratified an originally unauthorized tort.
26  [Citations.] The failure to discharge an employee who has committed misconduct may be
27  evidence of ratification." Baptist v. Robinson (2006) 143 Cal. App. 4th 151, 169;
28  OPPOSITION TO MOTION TO DISMISS
    CASE NO.:   4:23-cv-06081-DMR                          PAGE _9_ OF _11_

California Civil Code §2339. "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery . . . A principal may be liable when it ratifies an originally unauthorized tort." C.R. v. Tenet Healthcare Corp. (2009) 169 Cal. App. 4th 1094, 1110-11.

Practicalities:

The danger for the employer is quite real if an employee engages in misguided efforts to "help" the business by engaging in wrongful actions, either negligent or intentional. So long as the employee was directing his or her efforts primarily for the business and not for personal reasons only, the employer is liable. As one client remarked, "If he commits fraud, I pay the bill if he did it trying to help the business despite what I told him?" Yes. And note the danger of ratification. Recall that if the employer does not promptly and effectively take steps to counter the wrongful act, including reprimands, perhaps firing, making restitution, correcting the error . . . then even if the act was originally prohibited, the employer is directly liable.

This becomes acute since while the employee may also be liable, the employer is normally the "deep pocket" sought by a plaintiff. For all the practical purposes, the employer is truly "his brother's keeper" for the employee.

Protection for the employer is to be vigilant not only in training but in supervision of employees and the moment any dishonest towards third parties is noted . . . or negligent performance . . . to take immediate corrective action. Do not wait for the litigation, move now before the litigation erupts.

OPPOSITION TO MOTION TO DISMISS
CASE NO.:    4:23-cv-06081-DMR                          PAGE _10_ OF _11_

The District Court judge may exercise his or her 'judicial experience' in determining whether Plaintiff Stephens' pleadings are sufficient in stating a cause of action on which a remedy can be granted. See Iqbal and Twomby.

## IV.   CONCLUSION AND PRAYER

For all the foregoing arguments, Plaintiff NICHOLAS C. STEPHENS respectfully requests that the court deny Defendant United Parcel Services Inc.'s Motion to Dismiss Plaintiff's Complaint. Plaintiff prays that the court allow him to continue to pursue and prosecute his claims against Defendants, as set forth in Plaintiff's Complaint. In the alternative, Plaintiff requests that the court permit him to file a first amendment to his Complaint, alleging more detailed facts and asserting additional causes of action or claims against Defendants, such as wrongful termination, retaliation, conspiracy to commit violation or deprivation of civil rights, willful spoliation of evidence and concealment of the same, false imprisonment and various other causes of action.

Date: December 28, 2023

Respectfully submitted by: _Nicholas C. Stephens_

**Nicholas C. Stephens**
(*Plaintiff Pro Se*)

# PLAINTIFF NICHOLAS STEPHENS' New Evidence - 1

## 🧠 Rapid Brain Injury Analysis EEG/ERP Patient Report

## EEG/ERP Patient Report

| Physician/Practice Information: | | Patient Information: | |
|---|---|---|---|
| Rapid Brain Injury Analysis<br>36144 42nd Street East<br>Palmdale CA 93552 | | Name: | Nicholas Stephens |
| | | ID: | 28409 |
| | | Birth Date: | 06/11/1990 |
| Supervising Technician: | Donna Meeks DC | | |
| Ordering Physician: | David Brandes MD | Study Information: | |
| | | Order Notes: | |
| Interpreting Physician | | Data-Set ID: | 37936 |
| | | Date Uploaded: | 08/26/2023 |

### Test Notes:

### Study Findings:

An audiogram was performed and a slight hearing deficit was noted in the left ear. Unilateral hearing deficits do not affect the reliability of the study data results.

Task Performance Results demonstrated normal Button Press Accuracy and markedly prolonged Median Reaction Time, consistent with impaired stimulus processing and executive function. False Alarms were in the normal range.

The P50 Standard Peak Amplitude is normal.

The N100 Standard Peak Amplitude is normal.

The N100 Standard Peak Latency is significantly increased.

The P200 Standard Peak Amplitude is normal.

The N200 Target Peak Amplitude has significantly decreased, suggesting possible suboptimal brain processing for executive function. Peak Latency is normal.

The P3b Target Peak Amplitude is normal. The P3b Latency is normal.

The Slow Wave Target is significantly decreased which is consistent with possibly requiring more time for stimulus processing. Latency is normal.

The P3a Distractor Peak Amplitude is normal. The P3a Distractor Peak Latency is normal.

The Peak Alpha Frequency is normal.

There is a significant right-left asymmetry noted in the frontal and parietal electrodes with the left side being decreased compared to the right. In the context of Traumatic Brain Injury (TBI), it likely indicates there is also a localized trauma in the left frontal and parietal regions.

This patient, a 33 year old male, was an assault victim on 3/22/2022. He got into an altercation with a coworker who punched the patient on the left side of his head repeatedly, dislocating the patient's jaw and collarbone. The patient went briefly unconscious and dropped to the ground hitting his head on the concrete. The patient went to an ER where they reset his jaw and shoulder. In February of 2023 he got an MRI scan of his brain. At this time the patient suffers from a shooting pain in the left eye, occasional headaches, vertigo, tinnitus, numbness and tingling in his arms and legs. He suffers from bouts of anxiety and panic attacks. He states that he now has short-term memory loss and his mind is slower. He has trouble sleeping. The patient states that he has had no prior incidents involving head injuries except for a few received while playing football as a teenager. He attributes no symptoms to these early incidents. He has had no subsequent head injuries. He did not have any medications, drugs, alcohol or caffeine within 12 hours of this TBI test.

CLINICAL IMPRESSION: The EEG/ERP Study demonstrates that this patient has a significant traumatic brain injury (TBI) with impairment of executive function and stimulus processing .There is a significant right-left asymmetry noted in the frontal and parietal electrodes with the left side being decreased compared to the right. In the context of Traumatic Brain Injury (TBI), it likely indicates there is also a localized trauma in the left frontal and parietal regions. Based on the available history, the symptoms of impaired cognitive function have been present only after the injury listed above and it is medically probable that the documented cognitive impairment seen in the EEG/ERP test is due to a traumatic brain injury (TBI) that occurred in the accident. It is recommended that this person should be considered for continued evaluation and treatment by a specialist in brain function, such as a neurologist and/or neuropsychologist. In addition, if not already done, formal neuro-cognitive testing should be considered.
David W. Brandes, MS, MD, FAAN, FAHA

### Study Protocol:

Auditory_Oddball_Active_3_03

| Test Name | Test Description | Patient Instructions |
|---|---|---|
| Auditory_Oddball_Training_2_01 | | Press button with your dominant hand (red button for right-handed and blue button for left-handed) when you hear the high-pitched tone. |
| Auditory_Oddball_Active_3_01 | | Press button with your dominant hand (red button for right-handed and blue button for left-handed) when you hear the high-pitched tone. |
| EEG | EEG capture | |
| EEG | | |

**Rapid Brain Injury Analysis**        **Patient:** Nicholas Stephens        **Date:** 08/26/2023

| Physician/Practice Information: | | Patient Information: | |
|---|---|---|---|
| Rapid Brain Injury Analysis | | Name: | Nicholas Stephens |
| 36144 42nd Street East | | ID: | 28409 |
| Palmdale CA 93552 | | Birth Date: | 06/11/1990 |
| Supervising Technician: | Donna Meeks DC | Study Information: | |
| Treating Physician: | David Brandes MD | Order Notes: | |
| | | Date Uploaded: | 08/26/2023 |

## Test Name:

Auditory_Oddball_Active_3_01

### TASK PERFORMANCE

| Feature | Value |
|---|---|
| Button Press Accuracy (%) | 98.3 |
| False Alarms (%) | 0.3 |
| Median Reaction Time (ms) | 512.0 |

### ERP FEATURES

| Feature | Stimulus | Amplitude (µV) | Latency (ms) | Avg Amplitude (µV) |
|---|---|---|---|---|
| P50 | Standard | 1.15 | 28.6 | -1.58 |
| N100 | Standard | -8.95 | 109.7 | -5.47 |
| P200 | Standard | 9.85 | 176.0 | 4.47 |
| N200 | Target | -6.81 | 216.0 | -2.31 |
| P3b | Target | 8.42 | 332.0 | 2.40 |
| SW | Target | -8.01 | 436.8 | -1.68 |
| P3a | Distractor | 7.02 | 304.0 | 3.55 |



| **Physician/Practice Information:** | | **Patient Information:** | |
|---|---|---|---|
| Rapid Brain Injury Analysis<br>36144 42nd Street East<br>Palmdale CA 93552 | | Name:<br>ID:<br>Birth Date: | Nicholas Stephens<br>28409<br>06/11/1990 |
| **Supervising Technician:** | Donna Meeks DC | **Study Information:** | |
| **Treating Physician:** | David Brandes MD | **Order Notes:** | |
| | | **Date Uploaded:** | 08/26/2023 |

**Test Name:**

EEG

| EEG FEATURES | | |
|---|---|---|
| *Feature* | *Peak Frequency* | *Power* |
| Peak Alpha | 10.13 | 253.6 |

| EEG POWER SPECTRUM | | |
|---|---|---|
| P3 | Pz | P4 |

**Rapid Brain Injury Analysis**          **Patient:** Nicholas Stephens          **Date:** 08/26/2023





| **Physician/Practice Information:** | | **Patient Information:** | |
|---|---|---|---|
| Rapid Brain Injury Analysis | | Name: | Nicholas Stephens |
| 36144 42nd Street East | | ID: | 28409 |
| Palmdale CA 93552 | | Birth Date: | 06/11/1990 |
| **Supervising Technician:** | Donna Meeks DC | **Study Information:** | |
| **Treating Physician:** | David Brandes MD | Order Notes: | |
| | | Date Uploaded: | 08/26/2023 |

**Test Name:**

Pure Tone Audiometry

AUDIOGRAM



# PLAINTIFF NICHOLAS STEPHENS'
## New Evidence - 2

Printed by: osj4542
Printed date/time: 12/13/23 17:57

# Incident Report

Page 1 of 1

**OAKLAND POLICE DEPARTMENT**
**455 7TH STREET**
**OAKLAND, CALIFORNIA 94607**
**(510) 238-3021**

**Incident Number: 23-023747**

## Incident Summary

| | | | |
|---|---|---|---|
| **Incident Type:** FELONY ASSAULT | | **Report Type:** | INCIDENT REPORT |
| **Inc Occurred Address:** 8400 PARDEE DR, OAKLAND, CALIFORNIA 94621 | | **Sector/Beat:** | CCD7/31X |
| **Inc Occurred Start:** 03/22/2022 17:00 | **Inc Occurred End:** 03/22/2022 17:00 | **Report Taken:** | |
| **Domestic:** N | **Bias Motivation:** | **Gang Related:** N | **Substance:** U |
| **Contact Nature:** NO | | **Reported Date/Time:** | 05/12/2023 18:30 |
| **Reporting Officer:** MCDOWELL, ALEC | **Primary Assigned Officer:** | | |
| **Case Status:** | **Disposition:** | **Disposition Date:** | |

## Offenses

**Statute Code:** PC243 (D) **Enhancers:**
**Statute Desc:** BATTERY W/SERIOUS BODILY INJURY
**Counts:** 1 **Statute Severity:** Felony

## Persons Involved

| | | | |
|---|---|---|---|
| **Person#:** 0001 | **MNI:** 2951880 | | **Can ID Suspect:** No |
| **Event Association:** SUSPECT | | **Contact Date/Time:** 05/12/2023 18:05 | |
| **Name:** ▮▮▮▮▮▮ | | | |
| **SSN:** | **DOB:** | **Age:** 35 - 36 **Sex:** MALE | **Race:** BLACK |
| **Height:** 6' 5" - 6' 5" | **Weight:** 300 - 300 lbs | **Eye Color:** BROWN | **Hair Color:** BLACK |
| **Address:** ▮▮▮▮▮▮ | | | **Sector/Beat:** CCD7/31X |
| **Phone Type 1:** BUSINESS | **Phone# 1:** ▮▮▮▮▮ | **Ext 1:** | |
| **Phone Type 2:** | **Phone# 2:** | **Ext 2:** | |
| **DL State:** | **DL#:** | **DL Exp. Date:** ▮▮ | |
| **Occupation:** ▮▮▮▮▮ | | **Employer/School:** ▮▮▮ | |

### Characteristics

| **Characteristic Type:** | **Further Defined By:** | **Description:** |
|---|---|---|
| HAIR LENGTH | SHORT | |
| COMPLEXION | DARK | |

| | | | |
|---|---|---|---|
| **Person#:** 0002 | **MNI:** 2951881 | | **Can ID Suspect:** No |
| **Event Association:** VICTIM | | **Contact Date/Time:** 05/12/2023 18:00 | |
| **Name:** STEPHENS, NICHOLAS | | | |
| **SSN:** | **DOB:** ▮▮▮ | **Age:** 31 - 31 **Sex:** MALE | **Race:** WHITE |
| **Height:** 5' 11" - 5' 11" | **Weight:** 180 - 180 lbs | **Eye Color:** BROWN | **Hair Color:** BROWN |
| **Address:** ▮▮▮▮▮ | | | **Sector/Beat:** 2/31X |
| **Phone Type 1:** BUSINESS | **Phone# 1:** | **Ext 1:** | |
| **Phone Type 2:** CELL | **Phone# 2:** ▮▮▮▮ | **Ext 2:** | |
| **DL State:** CALIFORNIA | **DL#:** ▮▮▮ | **DL Exp. Date:** ▮▮ | |
| **Occupation:** ▮▮▮ | | **Employer/School:** ▮▮▮ | |

Printed by: osj4542
Printed date/time:  12/13/23 17:58

# Incident Report

Page 1 of 4

OAKLAND POLICE DEPARTMENT
455 7TH STREET
OAKLAND, CALIFORNIA 94607
(510) 238-3021

**Incident Number: 23-023747**

## Incident Summary

| | | |
|---|---|---|
| **Incident Type:**  FELONY ASSAULT | | **Report Type:**  INCIDENT REPORT |
| **Inc Occurred Address:**  8400 PARDEE DR, OAKLAND, CALIFORNIA 94621 | | **Sector/Beat:**  CCD7/31X |
| **Inc Occurred Start:**  03/22/2022 17:00     **Inc Occurred End:**  03/22/2022 17:00 | | **Report Taken:** |
| **Domestic:** N      **Bias Motivation:** | **Gang Related:**  N | **Substance:**  U |
| **Contact Nature:**  NO | | **Reported Date/Time:**  05/12/2023 18:30 |
| **Reporting Officer:**  MCDOWELL, ALEC | **Primary Assigned Officer:** | |
| **Case Status:**      **Disposition:** | | **Disposition Date:** |
| **Approved by:**  DUTTON, NIECHELLE      **Approved date/time:**  05/15/2023 22:27 | | **Approve status:**  Approved |

### Offenses

**Statute Code:**  PC243 (D)                          **Enhancers:**
**Statute Desc:**  BATTERY W/SERIOUS BODILY INJURY
**Counts:**    1     **Statute Severity:**  Felony

### Officers

| Event Association | Emp# | Badge# | Name | Squad# |
|---|---|---|---|---|
| REPORTING OFFICER | 9812 | | MCDOWELL, ALEC | |
| Primary Responding Officer | 9812 | | MCDOWELL, ALEC | |
| REPORTING OFFICER'S SUPERVIS | 8411 | | BOWLING, SEAN | |
| REVIEWER | 8411 | | BOWLING, SEAN | |

## Persons Involved

| | | |
|---|---|---|
| **Person#:  0001** | **MNI:  2951880** | **Can ID Suspect:**  No |
| **Event Association:**  SUSPECT | **Contact Date/Time:**  05/12/2023 18:05 | |
| **Name:** ▇ | | |
| **SSN:** ▇ | **DOB:** | **Age:** 35 - 36    **Sex:** MALE      **Race:** BLACK |
| **Height:**  6' 5"  - 6' 5" | **Weight:**  300 - 300 lbs | **Eye Color:**  BROWN      **Hair Color:**  BLACK |
| **Address:** ▇ | | **Sector/Beat:**  CCD7/31X |
| **Phone Type 1:**  BUSINESS | **Phone# 1:** ▇ | **Ext 1:** |
| **Phone Type 2:** | **Phone# 2:** | **Ext 2:** |
| **DL State:** | **DL#:** | **DL Exp. Date:** |
| **Occupation:** ▇ | | **Employer/School:** ▇ |

### Characteristics

| Characteristic Type: | Further Defined By: | Description: |
|---|---|---|
| HAIR LENGTH | SHORT | |
| COMPLEXION | DARK | |

| | | |
|---|---|---|
| **Person#:  0002** | **MNI:  2951881** | **Can ID Suspect:**  No |
| **Event Association:**  VICTIM | **Contact Date/Time:**  05/12/2023 18:00 | |
| **Name:**  STEPHENS, NICHOLAS | | |
| **SSN:** ▇ | **DOB:** ▇ | **Age:** 31 - 31    **Sex:** MALE      **Race:** WHITE |
| **Height:**  5' 11"  - 5' 11" | **Weight:**  180 - 180 lbs | **Eye Color:**  BROWN      **Hair Color:**  BROWN |
| **Address:** ▇ | | **Sector/Beat:**  2/31X |
| **Phone Type 1:**  BUSINESS | **Phone# 1:** ▇ | **Ext 1:** |
| **Phone Type 2:**  CELL | **Phone# 2:** ▇ | **Ext 2:** |
| **DL State:**  CALIFORNIA | **DL#:** ▇ | **DL Exp. Date:** |
| **Occupation:** ▇ | | **Employer/School:** ▇ |

Printed by: osj4542
Printed date/time:  12/13/23 17:58

**Incident Report**

OAKLAND POLICE DEPARTMENT
455 7TH STREET
OAKLAND, CALIFORNIA 94607
(510) 238-3021

**Incident Number: 23-023747**

## Modus Operandi

| | |
|---|---|
| **Against Persons:** | ■ |
| **Against Property:** | ■ |
| **Occupied:** | ■ |
| **General Premise 1:** | |
| **General Premise 2:** | |
| **Specific Premise:** | |
| **Surrounding Area 1:** | |
| **Surrounding Area 2:** | |
| **Surrounding Area 3:** | |
| **Relationship to Suspect 1:** | |
| **Relationship to Suspect 2:** | |
| **Weapon Type 1:** | ███████████████████ |
| **Automatic:** | ■ |
| **Weapon Type 2:** | |
| **Automatic:** | ■ |
| **Weapon Type 3:** | |
| **Automatic:** | ■ |

### Crime Against Property

| | | | |
|---|---|---|---|
| **# of Premises Entered:** | | **Suspect Action 1:** | |
| **Entry Point:** | | **Suspect Action 2:** | |
| **Exit Point:** | | **Suspect Action 3:** | |
| **Entry Loc 1:** | | **Suspect Action 4:** | |
| **Exit Loc 1:** | | **Suspect Action 5:** | |
| **Entry Loc 2:** | | **Additional Factor 1:** | |
| **Exit Loc 2:** | | **Additional Factor 2:** | |
| **Entry Method 1:** | | **Additional Factor 3:** | |
| **Exit Method 1:** | | **Additional Factor 4:** | |
| **Entry Method 2:** | | **Additional Factor 5:** | |
| **Exit Method 2:** | | **Security Type:** | |
| **Entry Tool 1:** | | **Victim Location:** | |
| **Exit Tool 1:** | | **Electronic Locks:** | ■ |
| **Entry Tool 2:** | | **Video Surveillance:** | ■ |
| **Exit Tool 2:** | | **Maid:** | |
| **Vehicle Entry:** | | **Inspectress:** | |
| **Safe Entry:** | | | |

### Crime Against Persons

| | | | |
|---|---|---|---|
| **Pre-incident Contact 1:** | | **Suspect Action 1:** | |
| **Pre-incident Contact 2:** | | **Suspect Action 2:** | |
| **Pre-incident Contact 3:** | | **Suspect Action 3:** | |
| **Victim Condition 1:** | | **Suspect Action 4:** | |
| **Victim Condition 2:** | | **Suspect Action 5:** | |
| **Victim Condition 3:** | | **Sex Crime 1:** | |
| **Victim Condition 4:** | | **Sex Crime 2:** | |
| **Victim Condition 5:** | | **Sex Crime 3:** | |
| **Suspect Solicited 1:** | | **Sex Crime 4:** | |
| **Suspect Solicited 2:** | | **Sex Crime 5:** | |
| **Suspect Pretended to Be:** | | **Vehicle Involvement 1:** | |
| | | **Vehicle Involvement 2:** | |

Printed by: osj4542
Printed date/time: 12/13/23 17:58

## Incident Report

**OAKLAND POLICE DEPARTMENT**
**455 7TH STREET**
**OAKLAND, CALIFORNIA 94607**
**(510) 238-3021**

**Incident Number: 23-023747**

### Narratives

ENTERED DATE/TIME: 5/12/2023 18:30:00
SUBJECT: SYNOPSIS
AUTHOR: MCDOWELL, ALEC

PC243(D)- BATTERY W/SERIOUS BODILY INJURY

NIC

---

ENTERED DATE/TIME: 5/12/2023 18:30:00
SUBJECT: FBR NARRATIVE
AUTHOR: MCDOWELL, ALEC

SUMMARY:

On 12 May 23 at approximately 1800 hrs, I was working as 2L01. I was wearing full OPD Police Utility Uniform, and operating out of fully marked patrol vehicle 1468. I was dispatched to 455 7th St (PAB) to take a report of an assault that had occurred a year ago.

I arrived on scene and made contact with STEPHENS, Nicholas (V1). V1 advised me that the assault had occurred on 22 Mar 22 at 8400 Pardee Dr (UPS). V1 stated that the person who had assaulted him is ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (S1). V1 described S1 as a MB, 35 yrs old, 6'5", 300 lbs, short black hair, brown eyes, and was wearing a blue polo shirt, and black pants. V1 advised that he worked at UPS (8400 Pardee Dr.), and S1 was his shift supervisor.

I took a BWC statement from V1. Summary of V1's statement listed below. (SEE BWC STATEMENT FOR FURTHER DETAILS):

V1 advised on 22 Mar 22 at approximately 1700 hrs, he was working at UPS (8400 Pardee Dr) as a clerk. V1 stated he had gotten into a verbal altercation with S1 earlier in the shift, and had filed a "grievance" against S1 with the company. V1 advised he was on his lunch break, and was walking to his vehicle. V1 stated that S1 was seated on the trunk of his vehicle, and he told S1 to get off his car. S1 refused to get off V1's vehicle, and V1 then entered the driver's door of the car. V1 told S1 several more times to get off his car, and S1 refused. S1 then approached the open driver's door, and told V1 "Get out of the car white boy". S1 then stated "I am going to beat your ass." V1 advised he then exited the vehicle, and was in a verbal altercation with S1. V1 stated that while he was looking away from S1, he had punched him one time to the left jaw area. V1 advised this caused him to lose consciousness, and fall back towards his vehicle. V1 stated that S1 then continued to punch him approximately 20-30 times to his upper body area. S1 then used both arms to pick V1 up, and threw him to the ground. V1 advised he regained consciousness, and observed that S1 had fled the area.

V1 advised he would be able to positively identify S1, is willing to cooperate with the investigation, and would

# Incident Report

**OAKLAND POLICE DEPARTMENT
455 7TH STREET
OAKLAND, CALIFORNIA 94607
(510) 238-3021**

**Incident Number: 23-023747**

like to press charges.

V1 stated that he had took photographs of the injuries he sustained during the attack. I observed that V1 had swelling and bruising to his left eye. I also observed that V1 had several scrapes, bruises, and swelling to his chest, shoulders, and neck area. I used my BWC to document the photographs of the injuries.

V1 advised he had reported the incident to UPS, and already received medical attention.

V1 stated he was treated at San Leandro Kaiser who stated he had a compressed spine from the incident.

I provided V1 with a report number and Marsy's card.

I conducted a file check of S1 via W&W for any active wants or warrants, which yielded negative results.

CONCLUSION:

On 22 Mar 22 at approximately 1700 hrs, V1 was in a verbal and physical altercation with S1 at 8400 Pardee Dr (UPS). During the physical altercation S1 struck V1 several times with a closed fist leading to serious bodily injury.

This is in violation of PC243(D)- BATTERY W/SERIOUS BODILY INJURY.

OPD ADMIN:
BWC activated.
No known witnesses identified.

## Signatures

| Reporting Officer | Date |

| Supervisor | Date |

# PLAINTIFF NICHOLAS STEPHENS'
## New Evidence - 3



C  🔒 healthy.kaiserpermanente.org/northern-california/secure/appointments/past-visits

## Provider Notes

ON LEE PIQUE MD at 3/22/2022  7:22 PM

ergency Department Note
ne seen by physician: 9:38 PM

: ASSAULT AND BATTERY (pt states he was assaulted by his supervisor in the parking lot at work Oakland pt
ites it happened at UPS 8400 Pardee Oakland )

'I: Nicholas C Stephens is a 31 Y male who presents to the ED for evaluation of injuries that occurred today at
ports he is a union representative for his job, and file grievances that cost the company $40,000.  He feels he
:aliated against today, and assaulted by his supervisor and a total of 5 men.  He reports are much bigger than
edominantly punched him in the face and upper chest.  No loss of consciousness.  Has facial pain and headacl
ck pain, upper chest and bilateral shoulder pain.  Shins and feet are painful and tingly, however he reports tha
en ongoing over the past few weeks to months due to lumbar radiculopathy.  No shortness of breath, no
dominal pain, otherwise well.
cation: chest/neck/total bodyu. Quality: painful. Radiation: bilateral. Severity: severe. Timing: hours. Associate
mptoms: bruising. Modifying factors: worsening with time

l of the MSE, nurses notes, computerized medical record, vital signs, medications, & allergies have been review

l: Contrast dye [ivp dye, iodine containing] and Norco [hydrocodone-acetaminophen]









healthy.kaiserpermanente.org/northern-california/secure/appointments/past-visits

Assessment/Plan: 32 Y patient with multiple symptoms, finding of cervical stenosis C3-4. Has some findings of myelopathy

1) recommend flex/ext cervical XR to r/o any movement at the C3-4 level in particular
2) EMG for possible ulnar nerve compression on left
3) recommend ACDF for C3-4, MRI to r/o any postglial cord impingement
4) consider second opinion if patient wishes to consider disc replacement, explained the risk of adjacent level disease
5) consider ACDF for C3-4, send result of flex/ext and thoracic MRI to explain his hemibody sensory changes
6) recommend quitting smoking, especially if ACDF
7) discussed that surgery would not treat all of his symptoms, but would help prevent further decline or symptoms potentially related to cord dysfunction.
8) recommend evaluation from ENT for jaw symptoms
9) headaches are un related to cervical spine, cold consider neurology consult
10) answered all questions
11) discussed alternatives
12) could try an epidural injection in cervical spine as a diagnostic test and therapeutic measure

Discussed treatment plan and recommendation with patient in detail, they are understanding of the findings and my recommendations and had the opportunity to ask any and all questions

pt is to call or schedule a follow-up appointment if symptoms acutely worsen

I have confirmed the presence of the above clinical diagnoses, which were considered in the current and ongoing care of the patient. At the time of this visit, the medical record indicates, and/or the patient states, that there are no changes in these conditions unless otherwise noted. As treatment warrants, the patient has been advised to follow up with his PCP or appropriate specialist.

I have reviewed medications appropriate for my specialty.

The total visit time face to face with the patient was over 50 minutes.
Time spent in counseling and discussion with the patient was over 40 minutes.
Topics discussed as noted above.

No diagnosis found

# PLAINTIFF NICHOLAS STEPHENS'
## New Evidence - 4


An official website of the United States government
Here's how you know

FULL TEXT LINKS


ELSEVIER
FULL-TEXT ARTICLE

Spine J. 2018 Jan;18(1):63-71. doi: 10.1016/j.spinee.2017.06.036. Epub 2017 Jun 30.

# The 5-year cost-effectiveness of two-level anterior cervical discectomy and fusion or cervical disc replacement: a Markov analysis

Samuel C Overley [1], Steven J McAnany [2], Robert L Brochin [1], Jun S Kim [1], Robert K Merrill [1], Sheeraz A Qureshi [3]

Affiliations
PMID: 28673826   DOI: 10.1016/j.spinee.2017.06.036

## Abstract

**Background context:** Anterior cervical discectomy and fusion (ACDF) and cervical disc replacement (CDR) are both acceptable surgical options for the treatment of cervical myelopathy and radiculopathy. To date, there are limited economic analyses assessing the relative cost-effectiveness of two-level ACDF versus CDR.

**Purpose:** The purpose of this study was to determine the 5-year cost-effectiveness of two-level ACDF versus CDR.

**Study design:** The study design is a secondary analysis of prospectively collected data.

**Patient sample:** Patients in the Prestige cervical disc investigational device exemption (IDE) study who underwent either a two-level CDR or a two-level ACDF were included in the study.

**Outcome measures:** The outcome measures were cost and quality-adjusted life years (QALYs).

**Materials and methods:** A Markov state-transition model was used to evaluate data from the two-level Prestige cervical disc IDE study. Data from the 36-item Short Form Health Survey were converted into utilities using the short form (SF)-6D algorithm. Costs were calculated from the payer perspective. QALYs were used to represent effectiveness. A probabilistic sensitivity analysis (PSA) was performed using a Monte Carlo simulation.

**Results:** The base-case analysis, assuming a 40-year-old person who failed appropriate conservative care, generated a 5-year cost of $130,417 for CDR and $116,717 for ACDF. Cervical disc replacement and ACDF generated 3.45 and 3.23 QALYs, respectively. The incremental cost-effectiveness ratio (ICER) was calculated to be $62,337/QALY for CDR. The Monte Carlo simulation validated the base-case scenario. Cervical disc replacement had an average cost of $130,445 (confidence interval [CI]: $108,395-$152,761) with an average effectiveness of 3.46 (CI: 3.05-3.83). Anterior cervical discectomy and fusion had an average cost of $116,595 (CI: $95,439-$137,937) and an average effectiveness of 3.23 (CI: 2.84-3.59). The ICER was calculated at $62,133/QALY with respect to CDR. Using a $100,000/QALY willingness to pay (WTP), CDR is the more cost-effective strategy and would be selected 61.5% of the time by the simulation.

**Conclusions:** Two-level CDR and ACDF are both cost-effective strategies at 5 years. Neither strategy was found to be more cost-effective with an ICER greater than the $50,000/QALY WTP threshold. The assumptions used in the analysis were strongly validated with the results of the PSA.

**Keywords:** ACDF; Anterior cervical discectomy and fusion; CDR; Cervical disc replacement; Cervical spine; Cost-effectiveness Analysis; Degenerative disc disease; Spine surgery.

Copyright © 2017 Elsevier Inc. All rights reserved.

PubMed Disclaimer

## Comment in

Reply to the Letter to the Editor regarding "The 5-year cost-effectiveness of anterior cervical discectomy and fusion or cervical disc replacement: a Markov analysis".
McAnany SJ, Qureshi SA.
Spine J. 2018 Jun;18(6):1106-1107. doi: 10.1016/j.spinee.2018.02.011.
PMID: 29804619 No abstract available.

Misinterpreted Markov analysis.
Ólafsson G.
Spine J. 2018 Jun;18(6):1106. doi: 10.1016/j.spinee.2018.02.009.
PMID: 29804620 No abstract available.

## Related information

MedGen

## LinkOut - more resources

**Full Text Sources**
ClinicalKey
Elsevier Science

**Other Literature Sources**
scite Smart Citations

**Medical**
MedlinePlus Health Information

**Research Materials**
NCI CPTC Antibody Characterization Program

**Miscellaneous**
NCI CPTAC Assay Portal

# PLAINTIFF NICHOLAS STEPHENS'
## New Evidence – 5

## Video Tape

# <u>Law Office of Monika Hight</u>

PO Box 2628
Petaluma, CA  94953
Phone: (415) 234-6237
Fax: (415) 234-6239
monika@mhightlaw.com

December 4, 2023

Nicholas Stephens
19983 Forest Ave., Apt. 1
Castro Valley, CA  94546

Re:    <u>**NICHOLAS STEPHENS v. UPS and LIBERTY MUTUAL INS.**</u>

| | |
|---|---|
| WCAB No. | : ADJ15417105; ADJ16006194 |
| Claim No. | : WC648-D18004; WC648-D27827 |
| D/Injury | : CT-10/7/2021; 3/22/22 |

Dear Mr. Stephens;

Please find enclosed a thumb drive of the video from your date of injury.

Thank you.

**Very truly yours,**

*S/ Monika Hight*

**Monika Hight**

cc:    Tiffany Tooley, Liberty Mutual Insurance Company
Chris Lucas- UPS