UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS STEPHENS,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>        Defendant. | Case No. 3:23-cv-06081-JSC<br><br>**ORDER RE: MOTION TO DISMISS THIRD AMENDED COMPLAINT; REQUEST FOR LEAVE TO AMEND TO FILE FOURTH AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 38, 66 |

Nicholas Stephens, who is representing himself, filed this negligence/personal injury action against his former employer United Parcel Service ("UPS") following an incident in which another UPS employee assaulted him. UPS's motion to dismiss Plaintiff's Third Amended Complaint and Plaintiff's request for leave to amend to file a fourth amended complaint are now pending before the Court. (Dkt. Nos. 38, 66.) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and DENIES UPS's motion to dismiss, and GRANTS IN PART and DENIES IN PART Plaintiff's request for leave to amend.

## BACKGROUND

### A.    Third Amended Complaint Allegations

Plaintiff worked for UPS from April 2018 to April 2024. (Third Amended Complaint (TAC)[1], Dkt. No. 36 at 2.[2]) On March 22, 2022, Plaintiff was working the "day sort" operation as

---

[1] Although the document is captioned "Corrected Amended Complaint," it follows the second amended complaint, and the Court will thus refer to it as the "Third Amended Complaint."
[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1  Overgoods Clerk.  (*Id.*)  He performed a building inspection as directed by his union officer and
2  observed "Supervisor Martin doing work outside his scope of responsibility." (*Id.* at 3.) Plaintiff
3  asked Martin to stop and Martin yelled at him. (*Id.*)

4  Plaintiff left the area and began preparing a union grievance. (*Id.*) Operations Manager
5  Eric Smith advised Plaintiff that Martin was his relative and asked Plaintiff to rescind the
6  grievance, but Plaintiff refused. (*Id.*) Operations Manager Smith told Martin Plaintiff was
7  preparing a grievance and notified him where Plaintiff's vehicle was parked in the UPS parking
8  lot. (*Id.* at 5.)  On his lunch break, Plaintiff went to his car and found Martin sitting on the trunk
9  of his car. (*Id.* at 3.) Plaintiff asked Martin to get off, and Martin threatened Plaintiff saying "I'm
10 going to beat your ass white boy you want to grieve me." (*Id.*) Martin then prevented Plaintiff
11 from closing the door to his car and began punching Plaintiff and threw him to the ground where
12 the lost consciousness. (*Id.*)

13 When Plaintiff regained consciousness, he reported the incident to a UPS security officer
14 and his union officer. (*Id.*) The security officer began investigating and allowed him to leave
15 work to seek medical care, but Operations Manager Wayne stopped him from leaving and asked
16 him not to report what had happened to law enforcement in exchange for "comprehensive medical
17 care and guaranteed job security." (*Id.*) Plaintiff went to the hospital and was diagnosed with a
18 dislocated broken jaw and a dislocated broken joint in the left shoulder as well as "moderate TBI
19 with visible damage to the brain." (*Id.*) Plaintiff has been unable to work since the incident. (*Id.*)
20 UPS has "actively and currently retaliate[d] again [plaintiff]." (*Id.* at 5.)  In April 2024, UPS
21 terminated Plaintiff's health insurance. (*Id.* at 4.)

22  **B.  Procedural Background**

23 Plaintiff filed this personal injury action in the Alameda County Superior Court and UPS
24 removed it to this Court based on diversity of citizenship.  *See* 28 U.S.C. § 1332.  The Court
25 granted Defendant's initial motion to dismiss because the basis for Plaintiff's personal injury
26 claim was unclear. (Dkt. No. 17 at 2.) Plaintiff amended his complaint alleging several additional
27 claims and adding Liberty Mutual Insurance Company as a defendant. (Dkt. No. 18.) The Court
28 granted UPS's subsequent motion to dismiss with leave to amend his Title VII, Labor Relations

2

1   Management Act ("LMRA"), unfair labor practices, California Civil Code Section 3281, and
2   California Labor Code Section 3602 claims, and to plead a common law personal injury claim.
3   (Dkt. No. 29 at 9.)  The claims against Liberty Mutual Insurance Company, who was never served,
4   were dismissed without prejudice as Plaintiff had not alleged any facts as to its involvement.
5         Plaintiff thereafter filed the now operative Third Amended Complaint which only pleads a
6   negligence/personal injury claim against UPS.  (Dkt. No. 36, 38.)  The Court appointed pro bono
7   counsel to represent Plaintiff and stayed the case pending a settlement conference before a
8   magistrate judge.  (Dkt. Nos. 42, 43, 45.) The Court subsequently granted pro bono counsel's
9   motion to withdraw and, while the parties attended a settlement conference with Magistrate Judge
10  Tse, the case did not resolve.  (Dkt. Nos. 57, 65.)  After pro bono counsel withdrew and while the
11  case was stayed, Plaintiff filed a motion for summary judgment and request to file a fourth
12  amended complaint.  (Dkt. Nos. 60, 66.)  At a further case management conference, the Court
13  lifted the stay and advised the parties it would rule on the fully briefed pending motion to dismiss
14  the Third Amended Complaint and consider Plaintiff's motion to amend the complaint
15  simultaneously.  (Dkt. No. 68.)

## DISCUSSION

17  UPS moves to dismiss Plaintiff's negligence/personal injury claim as barred by
18  California's workers' compensation exclusivity rule.  *See* Cal. Lab. Code §§ 3600 et seq.  UPS
19  insists courts routinely apply the rule to bar negligence claims attributable to the employer's
20  negligence or misconduct and argues "[e]ven taking Plaintiff's recounting of the assault is true,
21  UPS cannot be held liable for the damages caused by the willful and unprovoked attack of
22  physical aggression."  (Dkt. No. 38 at 12.)  UPS also moves to dismiss for failure to state claim.

23  **A.  Workers Compensation Exclusivity Rule**

24  "The workers' compensation exclusivity rule is the rule, embodied in Labor Code sections
25  3600, 3601 and 3602, that with certain exceptions, an injury sustained by an employee arising out
26  of and in the course of his or her employment is compensable by way of a workers' compensation
27  insurance award only, not by a tort judgment." *Lee v. W. Kern Water Dist.*, 5 Cal. App. 5th 606,
28  624 (2016).  Section 3600 provides that, with exceptions, workers' compensation liability exists

United States District Court
Northern District of California

"in lieu of any other liability whatsoever" "against an employer for any injury sustained by his or her employees arising out of and in the course of the employment" if specified "conditions of compensation concur[.]" Cal. Lab. Code § 3600(a).

"[A] two-step analysis normally is required to determine whether a claim is within the exclusive jurisdiction of the Workers' Compensation Appeals Board (WCAB)." *Operating Engineers Loc. 3 v. Johnson*, 110 Cal. App. 4th 180, 185–86 (2003). First, "determining whether the plaintiff is seeking to recover for 'industrial personal injury or death'" "i.e., for personal injury or death sustained in and arising out of the course and scope of employment." *Id*. (cleaned up). Second,

> [i]f the plaintiff's claim comes within the conditions of compensation—i.e., if it is a claim for personal injury or death arising out of the course and scope of employment—one reaches the second step in the exclusivity analysis, which is to determine whether the acts or motives giving rise to the injury constitute a risk reasonably encompassed within the compensation bargain.

*Id*. (cleaned up). Generally, the defendant invoking the protections "of the Workers' Compensation Act bears the burden of pleading and proving, as an affirmative defense to the action, the existence of the conditions of compensation set forth in the statute which are necessary to its application." *Doney v. Tambouratgis*, 23 Cal. 3d 91, 96 (1979). However, an exception to that general rule exists when "the complaint affirmatively alleges facts indicating coverage by the act." *Id*. at 97.

UPS's motion does not discuss the conditions of compensation. Drawing all reasonable inferences from the complaint's allegations in Plaintiff's favor, at least two of the required ten conditions of compensation are not satisfied as a matter of law: "Where, at the time of injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment," and "[w]here the injury is proximately caused by the employment, either with or without negligence." Cal. Lab. Code §§ 3600(a)(2), (3). Plaintiff alleges his injury occurred while he was on his lunch break in and around his vehicle which was parked in UPS's parking lot. "The requirements that an injury arise out of employment or be proximately caused by employment" "is a looser concept of causation than the concept of proximate cause employed in tort law" and turns on whether "the connection between work and

4

the injury is a contributing cause of the injury." *Lee*, 5 Cal. App. 5th at 624 (cleaned up). "The requirement that the employee be acting in the course of employment is different: It generally means the injury happened at a time when the employee was working and in the place of employment." *Id*. at 624-25. UPS has not shown how either condition was met and thus has failed to meet its burden of demonstrating as a matter of law that the workers compensation exclusivity rule applies. *See De Martinez v. CRST Expedited, Inc.*, No. 23-1593 MWF MAAx, 2023 WL 4247701, at *4 (C.D. Cal. May 10, 2023) (discussing in detail the requirements for invoking the workers' compensation exclusivity rule).

Accordingly, UPS's motion to dismiss predicated on the workers compensation exclusivity rule is denied.

### B.      The Complaint Adequately Alleges a Negligence Claim

Next, UPS contends Plaintiff fails to allege a cognizable negligence claim. To plead a negligence claim, the plaintiff must allege the defendant owed plaintiff a legal duty, breached that duty, and that the breach was a proximate or legal cause of the plaintiff's injury. *See Merrill v. Navegar*, *Inc*., 26 Cal. 4th 465, 477 (2001). Plaintiff's negligence claim is predicated on a theory UPS owed Plaintiff a "duty to provide a safe workplace safe free of danger to employees" and "to ensure that its employees…were able to perform their duties and take breaks guaranteed by law without fear of violence from other employees" and that UPS breached that duty in part when it "notifi[ed] martin of the grievance and [his] vehicle[']s location" and Martin "attacked" Plaintiff and "UPS did not intervene to stop the attack," and instead, retaliated against Plaintiff after the attack. (Dkt. No. 36 at 4-5.)

Drawing all reasonable inferences from the allegations in Plaintiff's favor, he has adequately alleged negligence under respondeat superior and ratification theories. "The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment." *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 296 (1995). "This includes willful and malicious torts as well as negligence." *John R. v. Oakland Unified School Dist*., 48 Cal.3d 438, 447 (1989). Indeed, "an employee's willful, malicious and even criminal torts may fall within the scope of his or her

5

1  employment for purposes of respondeat superior, even though the employer has not authorized the
2  employee to commit crimes or intentional torts." *Lisa M*., 12 Cal.4th 296-97. "The nexus required
3  for respondeat superior liability" is "that the tort be engendered by or arise from the work." *Id*. at
4  298. For example, when "the altercation leading to the injury arise[s] solely over the performance
5  of [the employee's] duties, but his entire association with plaintiff arose out of his employment."
6  *Id*. Alternatively, "an employer may be liable for an employee's act where the employer either
7  authorized the tortious act or subsequently ratified an originally unauthorized tort." *Baptist v.
8  Robinson*, 143 Cal. App. 4th 151, 169–70 (2006) (citations omitted). For example, when an
9  employer fails to discharge an employee who has committed misconduct or "fails to investigate or
10 respond to charges that an employee committed an intentional tort, such as assault or battery." *Id.*
11 (citations omitted).

12     Plaintiff has alleged facts which plausibly support a negligence theory based on either
13 respondent superior or ratification. As alleged, Martin assaulted Plaintiff because Plaintiff was
14 preparing a grievance about Martin performing union related tasks at work. *See, e.g*., *Fields v.
15 Sanders*, 29 Cal. 2d 834, 839–40 (1947) (holding employer could be liable under respondeat
16 superior for employee truck driver's assault on another motorist following a dispute over
17 employee's driving because "the quarrel leading to plaintiff's injury arise solely over [the
18 employee's] performance of his duties as the driver of the truck" and his "entire association with
19 plaintiff arose out of his use of the public highway on his employer's business"). Likewise, the
20 allegations that the operations manager notified Martin of Plaintiff's planned grievance, advised
21 Martin of the location of Plaintiff's vehicle before the attack, refused to disclose Martin's identity,
22 and took adverse action against Plaintiff following the attack, are sufficient to plead ratification.
23 *See, e.g*., *Hart v. Nat'l Mortg. & Land Co*., 189 Cal. App. 3d 1420, 1430 (1987) (holding the
24 employer ratified the conduct and because a joint tortfeasor because it could be "charged with
25 knowledge of the acts by virtue of the fact [the plaintiff] allegedly reported them to [a supervisor],
26 and [the employer] failed to take action against [tortfeasor].").

27     Accordingly, UPS's motion to dismiss Plaintiff's negligence claim is denied.
28

### C.     Request to File Fourth Amended Complaint

After this motion to dismiss was fully briefed and while the case was stayed, Plaintiff filed, among other things, a request to amend his complaint and file a fourth amended complaint. (Dkt. No. 66.)  At the case management conference, the Court advised the parties it would consider the request in the context of this motion to dismiss.  (Dkt. No. 68.)

Federal Rule of Civil Procedure 15(a) provides leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003).  In determining whether justice requires leave to amend, courts consider "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Plaintiff requests leave to amend to plead additional facts in support of his personal injury/negligence claim, and to add (1) an intentional infliction of emotional distress (IIED) claim, (2) claims for violation of California Civil Code §§ 3281, 3282, 3283, (3) a "spoliation of evidence," claim; and (4) a "due process" claim.  (Dkt. No. 66.)  The Court has reviewed Plaintiff's request for leave to amend, concludes further briefing and oral argument are unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS IN PART and DENIES IN PART Plaintiff's request for leave to amend.

1. Plaintiff's request for leave to amend his personal injury/negligence claim to plead additional facts in support of his ratification theory is granted.  (Dkt. No. 66-2 at 22-24 (alleging UPS engaged in "various acts of ratification" including UPS manager Smith notified Martin (the assailant) (1) of Plaintiff's intent to file a grievance and (2) of the location of Plaintiff's vehicle so Martin could find him, and then assisted Martin in "his escape after the incident."; and UPS "refused to properly identify Martin and is currently retaliating against the plaintiff.").   Plaintiff is also granted leave to amend to plead an intentional infliction of emotional distress claim.  *See Herrick v. Quality Hotels, Inns & Resorts, Inc*., 19 Cal. App. 4th 1608, 1616-18 (1993) (holding employer could be liable for intentional infliction of distress where employer ratified the employee's misconduct based on facts showing the employer was aware of the assaultive conduct and failed to discipline or terminate the employee.").

7

1       2. Plaintiff's request for leave to amend to plead violations of California Civil Code §§ 3281, 3282, 3283 is denied.  These provisions do not provide a basis for relief and instead set forth general principles and definitions of damages under California law.  *See* Cal. Civ. Code § 3281 ("Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.");  § 3282 (defining "detriment"); § 3283 ("Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future").   Because these are not valid legal claims, amendment would be futile.

       3. Plaintiff's request for leave to amend to plead a "spoliation of evidence" claim is denied. Spoliation of evidence is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Hernandez v. Garcetti*, 68 Cal. App. 4th 675, 680 (1998) (discussing *Cedars-Sinai Med. Ctr. v. Superior Ct*., 18 Cal. 4th 1, 17 (1998)).  However, California courts have limited the claim and "there is no separate tort cause of action for intentional spoliation committed by a party to the underlying lawsuit, at least when the spoliation is or should have been discovered before the conclusion of that lawsuit." *Hernandez*, 68 Cal. App. 4th at 680.   Because Plaintiff alleges spoliation as to UPS—a party to this action—and the action is still pending, there is no tort claim for spoliation of evidence and leave to amend would be futile.

       4. Plaintiff's request for leave to amend to plead a "due process" claim is denied. While a due process claim can be brought under 42 U.S.C. § 1983, Plaintiff's allegation that "defendant's actions in denying the occurrence of the act of battery, editing the CCTV recordings, and transferring the case to federal jurisdiction for dismissal, constitute violation of Plaintiff s right to due process under the Fifth and Fourteenth Amendments to the United States Constitution" fails to state a claim.  (Dkt. No. 66-2 at 26-27.)  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Plaintiff has not alleged either element; nor is there a plausible basis to argue UPS, a private employer rather than a governmental actor, was

8

1  acting under the color of law.  Accordingly, leave to amend to allow Plaintiff to plead a section
2  1983 claim would be futile.

### CONCLUSION

For the reasons stated above, UPS's motion to dismiss is DENIED and Plaintiff's request for leave to amend is GRANTED IN PART and DENIED IN PART.  Plaintiff may either proceed with the Third Amended Complaint or file a fourth amended complaint in accordance with the above.  If Plaintiff elects to file a fourth amended complaint to add additional factual allegations regarding his personal injury/negligence claim and an intentional infliction of emotional distress claim, he should include as much detail as possible regarding those claims and the theories supporting liability.  **Plaintiff may not plead claims beyond those two claims or name additional defendants without leave of the Court.**

**On or before December 23, 2024, Plaintiff shall file either a statement indicating he intends to proceed with his Third Amended Complaint or file a fourth amended complaint in accordance with the above ruling.**

The Court sets a case management conference for February 13, 2025 at 1:30 p.m. via videoconference.  An updated joint statement is due February 6, 2025.

This Order disposes of Docket Nos. 38, 60, 66.

**IT IS SO ORDERED.**

Dated: November 27, 2024

JACQUELINE SCOTT CORLEY
United States District Judge